88 N.J. Super. 421 (1965)
212 A.2d 664
ROSE MAGER, AS GENERAL ADMINISTRATRIX AND AS ADMINISTRATRIX AD PROSEQUENDUM OF THE ESTATE OF FRANK MAGER, DECEASED, PLAINTIFF-APPELLANT,
v.
UNITED HOSPITALS OF NEWARK, DEFENDANT, AND NEW JERSEY MANUFACTURERS CASUALTY INSURANCE COMPANY, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued April 12, 1965.
Additional Memoranda Submitted April 20 and May 14, 1965.
Decided July 16, 1965.
*422 Before Judges GOLDMANN, SULLIVAN and LABRECQUE.
Mr. Jerome S. Lieb argued the cause for appellant (Messrs. Harkavy & Lieb, attorneys).
Mr. Edward V. Ryan argued the cause for respondent (Mr. John M. McCue, on the brief).
The opinion of the court was delivered by GOLDMANN, S.J.A.D.
The question here is whether an insurance company which maintains and operates its own clinic for the treatment of injured workmen, and which is alleged to have negligently caused serious injury and death to a workman in the course of treating him for injuries, is immune from an action at law for damages because it was also the workmen's compensation insurance carrier of his employer. The trial court held that it was and entered summary judgment in favor of the insurance company. Mager v. United Hospitals of Newark, 81 N.J. Super. 585 (Law Div. 1963).
The issue is a novel one in this State. It was projected and argued in Viducich v. Greater New York Mutual Ins. Co., 80 *423 N.J. Super. 15 (App. Div. 1963), certification denied 41 N.J. 129 (1963), as an inspection of the Appellate Division briefs shows. Vol. 1920, Superior Court Briefs (State Law Library). However, the issue was not resolved, the decision resting on other grounds.
Plaintiff, as administratrix and administratrix ad prosequendum, brought an action against New Jersey Manufacturers Casualty Insurance Company (Manufacturers) and United Hospitals of Newark, alleging that their joint and several negligence made necessary the amputation of decedent Frank Mager's right leg and ultimately caused his death. Her amended complaint alleged that Mager, who had a prior diabetic and circulatory condition, fractured three right metatarsals in an accident arising out of and in the course of his employment with American Window Cleaning Co. on May 12, 1960; that pursuant to his employer's instructions he was taken to Manufacturers' industrial clinic and thereafter to the Crippled Children's Hospital, owned and operated by the United Hospitals of Newark, and that at both institutions defendants, through their agents and employees, were informed of decedent's pre-existing condition. She charged that defendants negligently rendered surgical and medical treatment, failed to exercise the required skill, and used defective medical appliances and instruments, with the result that decedent's leg had to be amputated and he eventually died. Plaintiff demanded judgment against defendants jointly and severally.
In its answer Manufacturers denied negligence and, by way of separate defense, stated that it was the workmen's compensation carrier for decedent's employer; that any services it had rendered decedent were pursuant to its compensation policy and the New Jersey Workmen's Compensation Act; that its obligation was limited to payment of the benefits prescribed by the act, and it was not liable to plaintiff or her decedent in a third-party action brought pursuant to section 40 of the act (N.J.S.A. 34:15-40). Manufacturers then moved for summary judgment against plaintiff and its co-defendant *424 United Hospitals, which had filed a crossclaim for indemnification and contribution.
Finding no controlling New Jersey cases, the trial judge turned to out-of-state decisions holding that an action would not lie against the compensation insurance carrier, relying mainly on Flood v. Merchants Mutual Ins. Co., 230 Md. 373, 187 A.2d 320 (Ct. App. 1963), and Schulz v. Standard Accident Ins. Co., 125 F. Supp. 411 (D.C.E.D. Wash. 1954). He then reviewed various sections of our Workmen's Compensation Act and concluded that the statute revealed a pattern of equating the compensation carrier with the employer, particularly under N.J.S.A. 34:15-40, the section dealing with third-party actions. He pointed out that under subsection (f) of that provision, if the injured employee did not effect a settlement with or institute proceedings against the third person or his insurance carrier within one year of the accident, the employer or his carrier might do so. The statute, he said, did not envision that the compensation insurance carrier would be a third party, or that it could, as subrogee, sue itself. Summary judgment was then entered in favor of Manufacturers against plaintiff and co-defendant United Hospitals. The latter does not join in plaintiff's appeal.
When Manufacturers moved for summary judgment plaintiff was, of course, entitled to have the allegations of her complaint, including the charge of negligence, taken as true. Accordingly, the sole question before the trial court was a legal one  whether Manufacturers was immune from liability for its alleged negligence in the care and treatment of decedent, merely because it was also the employer's compensation insurance carrier. The issue is essentially one of statutory construction.
The trial judge in effect placed the compensation insurance carrier in the shoes of the employer, referring to various sections of the Workmen's Compensation Act to support his equating of the two. He cited N.J.S.A. 34:15-15 (obligation to provide medical and surgical treatment), 34:15-33 (notice of occupational disease), 34:15-34 (carrier's payment *425 or agreement to pay for occupational disease), and 34:15-40(f). Manufacturers' brief notes other sections which refer to "the employer or his insurance carrier": 34:15-12 (d) (liability where there was a prior compensable accident); 34:15-22 (agreement between employee and employer or compensation carrier, no bar to formal determination); 34:15-50 (approval and filing of settlement agreement); 34:15-82, 86 (liability for injury or death); 34:15-85 (employer's notice or knowledge of injury deemed carrier's); 34:15-100, 101 (filing of medical reports, penalty for non-compliance).
We have examined these sections, and others that might be mentioned, and conclude that they cannot be considered as equating the carrier with the employer. Their purpose is either procedural or for the purpose of defining primary and secondary liability. Mays v. Liberty Mutual Ins. Co., 323 F.2d 174 (3 Cir. 1963).
There is no statutory prohibition against an injured employee bringing a common-law action, except as may be provided in the Workmen's Compensation Act, R.S. 34:15-1 et seq., as amended. R.S. 34:15-7, the heart of the elective compensation article, provides that the employer shall pay his injured employee according to the schedules set out in sections 34:15-12 and 13 when they have by agreement, either express or implied, accepted the provisions of the article. Such an agreement is deemed a surrender by the parties of their rights to any other method, form or amount of compensation or determination thereof. R.S. 34:15-8. Prior to 1961 the employee was free to pursue his common-law remedy against any party other than his employer. L. 1961, c. 2, amended R.S. 34:15-8 to eliminate the bringing of such an action against a fellow employee, except for his intentional wrong.
An injured employee's common-law right of action against a third party has been preserved in R.S. 34:15-40, as amended:
"Where a third person is liable to the employee or his dependents for an injury or death, the existence of a right of compensation from *426 the employer or insurance carrier under this statute shall not operate as a bar to the action of the employee or his dependents, nor be regarded as establishing a measure of damage therein. * * *"
Although section 40 provides for various contingencies in the exercise of such third-party right of action, nowhere does it, either expressly or impliedly, enjoin an action against the employer's compensation carrier. The very last paragraph of section 40 defines "third person" as including "corporations, companies, associations, societies, firms, partnerships and joint stock companies as well as individuals." It does not exclude an employer's compensation carrier.
The third party referred to in section 40 is one other than the employer and employee, who were parties to the employment agreement. The injured employee's action against such third party is not barred by his right of compensation under the act  except for the immunity now provided fellow employees under the 1961 amendment.
The definition of "employer" in the Workmen's Compensation Act negatives the argument that the employer and his compensation carrier must be considered as one and the same. N.J.S.A. 34:15-36 declares "employer" to be "synonymous with master." An employer's compensation carrier cannot be considered as the injured employee's master.
A review of the Compensation Act shows that whenever the Legislature intended that the insurer be considered as possessing the same right, duty or obligation as the employer, it did so in specific terms. Never, in more than half a century of amending and supplementing the act, has the Legislature as much as indicated that it intended to blend the jural personalities of employer and his compensation carrier so as to bar a common-law action against the latter.
Like the trial judge, Manufacturers relies heavily upon the Flood and Schulz cases, above, as well as its reading of the sections of our Workmen's Compensation Act earlier referred to. There can be no question but that Flood and Schulz support the company's position. In our view, the compensation statute does not. It is New Jersey's statute which *427 we construe. Reading it in its entirety we must conclude that it does not immunize Manufacturers from liability in the circumstances of this case.
The issue with which we deal was considered and resolved against the compensation carrier in Nelson v. Union Wire Rope Corp., 31 Ill.2d 69, 199 N.E.2d 769 (Sup. Ct. 1964); Fabricius v. Montgomery Elevator Co., 254 Iowa 1319, 121 N.W.2d 361, 93 A.L.R.2d 591 (Sup. Ct. 1963); Mays v. Liberty Mutual Ins. Co., above, 323 F.2d 174, and Smith v. American Employers' Ins. Co., 102 N.H. 530, 163 A.2d 564 (Sup. Ct. 1960). We find these cases to be the better reasoned. (The New Hampshire decision has been nullified by subsequent legislation specifically granting the compensation carrier the immunity enjoyed by the employer. N.H. Rev. Stat. Ann., § 281:12.)
Manufacturers would distinguish these cases because in each instance the insurance company was not carrying out an obligation imposed by statute. (All four involved situations where the insurer had undertaken an inspection of the employer's premises, and had allegedly performed the inspection in a negligent manner.) Here, it is said, the insurance company was carrying out a duty inferentially imposed upon it under R.S. 34:15-15, which requires the employer to furnish such medical, surgical and other treatment, and hospital service as shall be necessary to cure and relieve the employee of the effects of the injury.
There is nothing in the Workmen's Compensation Act which requires a compensation carrier, any more than an employer, to maintain and operate a clinic. Defendant's operation of such a clinic was clearly in its own interest. Since it is ultimately bound to pay for medical services provided by insured employers, its clinic was obviously a means adopted to reduce costs and achieve possible economies. (Parenthetically, the record shows that the clinic had previously been operated by a corporation of which defendant was the principal stockholder. The corporate structure was changed in 1957; the hospital company was dissolved and its assets *428 taken over by Manufacturers, which thereafter maintained the clinic as a division and continued treatments and operations in substantially the same manner as before. The clinic also provides pre-employment examinations for employers at a fee  certainly not a service required of Manufacturers under the Compensation Act.)
What Manufacturers seeks is to limit its liability to such payments as are called for under the compensation schedules of the statute. This it may not do. The schedule payments are those it must make by reason of the obligations assumed under the terms of the compensation policy it issued to the employer. The recovery which plaintiff seeks is for allegedly negligent medical and surgical treatment given, not pursuant to a statutory or insurance policy obligation, but in the course of an independent undertaking, namely, the maintenance and operation of the clinic.
As it did at the trial level, Manufacturers here again resorts to the argument that to permit this action to be prosecuted would result in a situation where it could not pursue subrogation rights because it would have to sue itself under N.J.S.A. 34:15-40(f). True, if plaintiff recovers, the carrier will be subrogated to rights for such compensation as it had paid. However, a just result is reached by allowing it to set off such payments against the amount of plaintiff's recovery. Nelson and Mays, above.
The suggestion that runs through the insurer's argument in support of the summary judgment under appeal is that what happened at the clinic was nothing more than a sequel to the original work-connected injury. Manufacturers' brief refers to the sequelae as an "aggravation" of the original injury. This is merely another way of seeking the protection of the employer's liability, limited as it is to the schedules in N.J.S.A. 34:15-12 and 13.
Manufacturers would avoid the realities of the case. It was under no statutory or other obligation to run a clinic. Since it undertook to do so, it had the unquestioned duty of exercising reasonable care (the same standard as would be applicable *429 to any other clinic or hospital facility), and for the breach of which it would have to answer in damages. A negligence action recovery can, of course, be far more expensive to Manufacturers than payments under the compensation schedules.
An injured employee, or his estate, should be permitted to pursue the right of action which N.J.S.A. 34:15-40 has preserved. In any such action, a plaintiff must, of course, prove that the negligence charged proximately resulted in the injury or death for which damages are sought. Plaintiff has elected to assume that burden and, in our view, has a right to put her claim to the test of a full trial.
Reversed and remanded.