**Lee Amos HORNE and Viola Horne, his wife, Plaintiffs,**

v.

**SECURITY MUTUAL CASUALTY COMPANY, Defendant.**

**No. LR–66–C–92.**

United States District Court
E. D. Arkansas, W. D.

March 20, 1967.

Alonzo D. Camp, Little Rock, Ark., for plaintiffs.

Winslow Drummond, Wright, Lindsey & Jennings, Little Rock, Ark., for defendant.

## MEMORANDUM OPINION

GORDON E. YOUNG, District Judge.

This opinion deals with the defendant's motion to dismiss for failure to state a claim on which relief can be granted. Rule 12(b) (6) Fed.R.Civ.P. The motion will be granted.

Lee Amos Horne, plaintiff, was injured on December 5, 1965, in the plant of his employer, Swift & Company, while he and other employees were attempting to remove a broken frame from the top of a Sperry Filter Press. While assisting in this removal plaintiff slipped and fell from the press, his left foot plunging through an opening in the floor into a large helical auger, which resulted in severe injuries to plaintiff's leg and foot. The defendant, Security Mutual Casualty Company, had issued a policy of workmen's compensation insurance whereby defendant agreed to provide the following coverage for its insured, Swift & Company:

"I. *COVERAGE A—WORKMEN'S COMPENSATION.* To pay promptly when due all compensations and other benefits required of the insured by the Workmen's Compensation law.

"*COVERAGE B—EMPLOYERS' LIABILITY.* To pay on behalf of the insured all sums which the insured

shall become legally obligated to pay as damages because of bodily injury by accident or disease, * * *."

II. *DEFENSE, SETTLEMENT, SUPPLEMENTARY PAYMENTS.* (The customary undertaking by the defendant to provide a legal defense for the insured.)

As required by law, Security filed with the Arkansas Insurance Commissioner certain premium rating data necessary for it to write workmen's compensation insurance in this State, this data reflecting that 2.14% of each premium dollar was to provide "Accident Prevention and Safety Engineering Service for the Employer," and that this particular portion of the premium dollar was included in a total of 73.12% of each premium dollar projected "for the direct benefit of the employer and his employees." The remainder of the 73.12% was made up of two items—8.72% for adjusting and paying claims, representing employees at hearings, etc., and 62.26% for indemnity and medical payments to injured workmen.

The complaint indicates that the policy became effective September 2, approximately three months before the injury. No inspections were made by defendant of Swift's plant or equipment prior to the date plaintiff was injured.

Plaintiff filed claim against Swift and defendant under the provisions of the Workmen's Compensation Act of Arkansas, and as of June 1966 had received compensation benefits of $912.50 and medical benefits of $1,253.00. Plaintiff is continuing to receive such benefits from the defendant.

On April 21, 1966, plaintiff brought suit against defendant in the Circuit Court of Pulaski County, Arkansas, and defendant removed the cause to this Court under its diversity jurisdiction. In his complaint plaintiff alleges that defendant was guilty of negligence in failing to inspect Swift's plant and make recommendations for the elimination of hazards, and in particular in failing to recommend that certain safety precautions be taken around the Sperry press and the power driven auger, and that by reason of such negligence, the plaintiff suffered his injuries.

The defendant filed this motion to dismiss in which it contends that the plaintiff has failed to state a claim on which relief can be granted. In support of this contention defendant argues that its sole liability to plaintiff arises under the Workmen's Compensation Act of Arkansas; that defendant has discharged and will continue to discharge that liability; and that defendant, as the workmen's compensation carrier for plaintiff's employer, cannot be subjected to a suit for damages as a third-party tortfeasor within the meaning of the Workmen's Compensation Act of Arkansas.

On the other hand, plaintiff argues that we are not concerned with an interpretation of the Arkansas Workmen's Compensation Act. He contends the real issue is whether tort liability may arise from and out of the violation of a contractual undertaking.

More specifically, plaintiff says that prior to the date of the accident the defendant had entered into a premium rate contract with the State of Arkansas, by the terms of which defendant agreed to provide "Accident Prevention and Safety Engineering Services" for employees of Swift, and that it is admitted that no such services were provided by the defendant. The so-called "contract" referred to by plaintiff is the "Breakdown of Net Premium Rate" filed with the Arkansas Insurance Commissioner, which has been referred to above.

Defendant contends that the complaint should be dismissed because:

1. The pertinent sections of the Arkansas Workmen's Act clearly extend the employer's immunity to suit by an employee to the compensation insurance carrier;

2. The third party liability section of the Act (Ark.Stats. § 81–1340) clearly negates any interpretation permitting the imposition of liability on

the workmen's compensation carrier as a third party tortfeasor; and

3. Policy considerations underlying workmen's compensation legislation, in general—and the Arkansas Act, in particular—require immunity for the carrier for the ultimate benefit of employees and their dependents.

At the outset of this discussion, we observe:

1. The Arkansas Workmen's Compensation Act makes no provision for safety engineering or inspection services by an insurance carrier.

2. As has already been shown, defendant did not agree in its policy to provide any safety engineering or inspection services.

3. Defendant did not, in fact, furnish any such services.

■ Plaintiff is incorrect in characterizing "Breakdown of Net Premium Rate" filed with the State Insurance Commissioner as a "Contract with the State of Arkansas by the terms of which, inter alia, defendant agreed to provide 'Accident Prevention and Safety Engineering Services' for employees of defendant."

The document in question appears to be a general form and it would appear that it was for general use by insurance companies, not for the defendant alone. At the top appears "National Council on Compensation Insurance"—underneath then appears "Stock Companies"—beneath that appears "Breakdown of Net Premium Rate" (incidentally, defendant is not a stock company, but a mutual company, as is reflected by the back of the specimen policy).

Beneath this appears a "pie" chart, purporting to show the breakdown of the premium dollar. This chart is the sole basis for plaintiff's contention.

The percentages shown on this chart do not relate to this particular policy, but appear to relate to the overall experience with policies of this type, and it appears probable from the headings on the chart that these percentage figures are not for defendant alone, but are for a group of insurance companies.

In filing this chart, defendant did not agree to expend 2.14% of the premium dollar for safety engineering and inspection services as plaintiff contends. This is an average figure derived from the experience of a great many policy risks of this nature.

For example, this chart did not mean that defendant would expend 62.26% of the premium in payments to workmen or 8.72% for adjusting and paying claims; its obligations are measured by its insurance policy, where it agreed to pay all of such expenses. In any given year defendant might make no payments under these items, or it might pay several times the percentages reflected by the chart. And, for whatever it may be worth, the safety services reflected by the chart were shown as for the employer and not for "the express benefit of Swift's employees" as alleged by plaintiff.

This may be enough to dispose of the case, but the Court is of the opinion that in any event the Arkansas Workmen's Compensation Act insulates the defendant from liability here.

(1) Paragraph 1, Section 4 of the Act (Ark.Stats. § 81–1304, 1960 Repl.) provides remedies for workmen's injuries arising out of the course of their employment which are exclusive of all other rights and remedies as against the workmen's employer. Also see, Huffstetter v. Lion Oil Company, 208 F.2d 549 (8 Cir. 1953).

Judge Miller had occasion to construe this section and the Arkansas decisions in Ragsdale v. Watson, 201 F.Supp. 495 (W.D.Ark.1962). In that case the injured workman had brought an action against certain doctors, his employer's carrier, and the carrier's adjuster for damages for alleged civil conspiracy to defraud the employee by intentional submission of false and misleading medical reports to the Arkansas Workmen's Compensation Commission.

The defendant filed a motion to dismiss the complaint pursuant to Rule 12 (b) (6) Fed.R.Civ.P. (failure to state a claim upon which relief can be granted). The motion was granted, and in his opinion Judge Miller said, at page 499:

"Thus, any claim that the plaintiff has against his employer *or its workmen's compensation insurance carrier* or the agent of the carrier must be determined by a proceeding before the Workmen's Compensation Commission." (Emphasis added.)

■ (2) Section 37 (Ark.Stats. § 81–1337) of the Arkansas Act is entitled "Substitution of Carrier for Employer." This particular section provides that in the event an employer secures workmen's compensation insurance from a carrier, then the carrier must discharge the obligations and duties of the employer and stands in the shoes of the employer with respect to any proceedings brought by an employee before the Workmen's Compensation Commission or in a court. Section 37 should be construed in connection with Section 5 (Ark.Stats. § 81–1305) of the Act, which provides in part that an employer, having secured compensation benefits through insurance, is not relieved of the primary obligation to pay compensation. In effect, these two sections, taken together, require that the insurance carrier assume the employer's obligations and duties under the Act and that the employer discharge such obligations and duties only in the event the carrier, possibly through insolvency, is unable to respond.

(3) Under the Act, the carrier assumes the entire liability of the employer and the carrier's liability to the employer is measured by the terms of the policy. Section 38(c) of the Act (Ark.Stats. § 81–1338(c)):

"(c) *Coverage.* No policy of insurance shall be issued against liability under this act unless such policy cover the entire liability of the employer as to the business or businesses identified in the policy. As to any questions of liability between the employer and the insurer the terms of the policy shall govern."

(4) Section 40 (Ark.Stats. § 81–1340) provides:

"Third Party Liability.—(a) Liability Unaffected. (1) The making of a claim for compensation against any employer *or carrier* for the injury or death of an employee shall not affect the right of the employee, or his dependents, to make claim or maintain an action in court against any third party for such injury, but the employer *or his carrier* shall be entitled to reasonable notice and opportunity to join in such action. If *they, or either of them,* join in such action they shall be entitled to a first lien upon two-thirds ($\frac{2}{3}$) of the net proceeds recovered in such action that remain after the payment of the reasonable cost of collection, for the payment to them of the amount paid and to be paid by them as compensation to the injured employee or his dependents." (Emphasis added.)

Though this section does not speak of granting an insurance carrier "immunity" from suit by an injured employee, it would seem to negate any interpretation which could expose the insurance carrier to liability as a third party under the circumstances here. This section reserves the right of the employee to bring an action against a third party, but the question we are concerned with is: Can the carrier be considered as such a third party? Clearly the term as used in this section seems to mean a party other than the employer or carrier, both of whom are mentioned in the same sentence, and who are expressly given the right to join in any action brought by the employee against such a third party.

The first two sentences in Paragraph (b) of Section 40 seem to carry the same connotation:

"(b) *Subrogation.* An employer or carrier liable for compensation under this act for the injury or death of an employee shall have the right to maintain an action in tort against any third party responsible for such injury or

death. After reasonable notice and opportunity to be represented in such action has been given to the compensation beneficiary, the liability of the third party to the compensation beneficiary shall be determined in such action as well as the third party's liability to the *employer and carrier*." (Emphasis added)

Here again, the employer and the carrier are distinguished from the third party against whom an action may be maintained by the employee.

This appears to be a case of first impression in Arkansas. There are cases from other jurisdictions, but they are not entirely comparable because of the differences in the compensation laws in the various states.

Apparently the first reported case which permitted an employee to maintain an action against his employer's carrier is from New Hampshire. Smith v. American Employers Insurance Co., 102 N.H. 530, 163 A.2d 564 (1960).

In addition to the workmen's compensation policy, the carrier had issued other types of policies to the employer. The carrier had conducted monthly inspections of the plant, including the air tank which exploded. Plaintiff alleged a duty based upon an undertaking distinct from the compensation policy to inspect and provide safety measures. (The case is not clear as to the nature of the "undertaking.") The New Hampshire court interpreted the statutory language in its Compensation Act, RSA 281:14, "some person other than the employer," to include the defendant insurance carrier, and denied the argument that the carrier was entitled to share in the employer's statutory immunity.

The result reached in this case was subsequently overruled by statute.

Fabricius, Admrx. v. Montgomery Elevator Company, 254 Iowa 1319, 121 N.W. 2d 361, 93 A.L.R.2d 591 (1963). Here also the court denied immunity to the compensation carrier of the employer. According to the complaint, the defendant carrier "in that capacity reserved un-

to itself the right to inspect" the machinery and equipment, "although it was not obligated to do so under its policy." However, plaintiff alleged that the carrier did undertake to inspect, and did so negligently, causing the fatal injuries to decedent.

The Iowa court characterized the action thus: "This is an action for negligent inspection gratuitously undertaken."

The opinion goes on to state that Iowa's compensation laws:

"* * * do not equate the insurer with the employer for the purpose of negligent acts of the insurer related to its policy and the employment, nor deprive an injured employee of a common law action against the insurer for such negligent acts."

Nelson v. Union Wire Rope Corp., 31 Ill.2d 69, 199 N.E.2d 769. Here the Supreme Court of Illinois was required to construe the Workmen's Compensation Act of Florida. The court interpreted the third party liability section of the Florida Act, and found that the Act reserves the employee's right of action against the third party without stating who shall be or shall not be a third party. The pertinent section of the statute reads as follows, F.S.A. § 440.39:

"Such injured employee * * * may accept compensation benefits under the provisions of this law, and at the same time such injured employee, * * * may pursue his remedy by action at law or otherwise against such third party tort-feasor."

Another distinction between the *Nelson* case and the one at bar is that in *Nelson* the court stressed at considerable length that the insurance carrier actually undertook the inspections of the premises on numerous occasions—while in this case no inspections of any kind were made.

Mays v. Liberty Mutual Insurance Company, 323 F.2d 174 (3 Cir. 1963). Here the court construed the Compensation Act of the State of Pennsylvania. The employee had sued his employer's compensation carrier for personal inju-

ries resulting from the carrier's alleged breach of duty to inspect the work premises.

There was no statutory requirement of inspection, but in the insurance policy between Liberty and the employer the carrier was given permission to inspect the work premises, machinery and equipment covered by the policy, and the record showed that the carrier did undertake safety inspections of the plant. The court found that the definitions of the term "employer" in the Pennsylvania Act were unambiguous and did not include the compensation carrier. The court did not discuss the third party liability section of the Pennsylvania Act or, indeed, whether there was such a section in the statute. The court did point out that it did not suggest that the insurer has a duty to inspect.

It is apparent that there is one factual difference between all of these cases and the one at bar—in all of the cases which have allowed the maintenance of an action against the carrier, safety inspections had actually been made by the carrier.

More recent decisions, in 1965 and 1966, from other jurisdictions, have refused to allow the maintenance of such an action by the employee.

Kotarski v. Aetna Casualty and Surety Co., 244 F.Supp. 547 (E.D.Mich.1965). This action was brought pursuant to the third party liability provision of the Michigan Workmen's Compensation Act, which allows an injured employee to accept workmen's compensation benefits and also to proceed against a third party because of the injury. The plaintiff employee alleged in his complaint that Aetna voluntarily undertook to provide safety inspection services for the benefit of the employer and its employees and that it negligently performed this undertaking by failure to conduct regular inspections, etc. Defendant moved, under Rule 12(b) (6) to dismiss the action on the ground that it was not subject to liability as a third party tortfeasor under the Michigan Workmen's Compensation Act. The court posed the question at issue as follows: "Is the workman's compensation insurance carrier of the decedent's employer, who must pay the statutory benefits provided by the Michigan Workman's Compensation Act, also subject to liability under the third-party liability provision of that Act?" The court said that the legal foundation of the plaintiff's claim was based on the principle that liability can arise from the negligent performance of voluntary undertaking—that one who assumes to act, even though gratuitously, may thereby become subject to the duty of acting carefully.

After discussing the Michigan Act, the court said that the treatment of the compensation insurance carrier by the legislature, while not showing an affirmative intent to grant immunity, "does negative an intent to hold it liable to suit as a third party."

In discussing the argument that the case at bar involved a safety inspection which the carrier was not obligated to perform, the court said:

"While safety inspection may not be a duty imposed by the statute, it is an integral part of the insurer's function as a compensation carrier. Besides, it is not so much what the insurance carrier is doing that makes it immune, it is the relationship of the carrier and the employer. Certainly, an employer does not lose its statutory immunity whenever it does something not required by the compensation act. If the activity of the insurer, for which it was alleged to be negligent, bore no substantial relationship to its position as the employer's workmen's compensation carrier, (e. g., if an automobile collision occurred between the employee, while driving his employer's vehicle on the employer's business, and a vehicle operated by the insurance company's employee who also happened to be acting in the course of his employment) there would be no logical reason to hold the carrier to be immune. However, where the carrier is performing an integral part of its function under the Workmen's Com-

pensation Act, it should be immune under the same reasoning which makes it immune when performing a required activity."

The carrier's motion to dismiss was granted.

Donohue v. Maryland Casualty Company, 248 F.Supp. 588 (D.Md.1965). This involves an action by the estate of a deceased employee against the employer's compensation carriers. The complaint alleged that pursuant to its policy the carriers had the duty "or undertook" to inspect the machinery and equipment of the employer, and because of its failure to carry out that duty of inspection the employee was injured.

The carriers claimed immunity from the common law claims alleged in the complaints because of their standing as insurers of the workmen's compensation liability of the employers.

The Maryland Compensation Act, Code 1957, art. 101, § 58, preserved the common law rights of recovery to an employee against "some person other than the employer."

The court said that as it interpreted the decision in Flood v. Merchant's Mutual Ins. Co., 230 Md. 373, 187 A.2d 320 (1963), the Maryland Court of Appeals had held that when an insurer is performing the duty of an insured employer imposed on him by the compensation act it obtains the employer's immunity to suit for tort liability. The court went on to say that in this case the duty which the insurer is charged with performing negligently is not a duty imposed on the employer by the Act, but one imposed on the employer in common law.

> "An employer has the duty to provide a reasonably safe place to work, and this includes the duty to make inspections and to take safety measures in fulfillment of that obligation."

The court said that if an insurer is immune from tort liability when it performs a duty imposed on the employer by the Workmen's Compensation Act, "no discernable reason is apparent why it should not also be immune when performing a duty imposed on the employer at common law, just as the employer is immune when performing either class of duties." The court then said that the defendants were performing the duties of the employer "because the duty to provide a safe place to work, including the duty to make inspections and take reasonable safety measures, was the duty of the employers."

The court pointed out that it was not attempting to decide what is the proper rule to apply when insurers commit an act of negligence in carrying out activities which an employer has no duty to perform.

DeJesus v. Liberty Mutual Ins. Co., 423 Pa. 198, 223 A.2d 849 (1966). The court in this case took a different approach to the problem. The plaintiff was struck in the eye by bailing wire while opening a bail of wool in the course of his employment. He sued his employer's compensation carrier under common law. The defendant had advertised that it provided loss prevention service and safety counsel to its policyholders, and on the basis of these advertisements plaintiff contended that it was liable to him for failure to perform such service under common law. However, the court held that the advertisements did not create a duty of the carrier to the injured employee, and that the carrier was not liable to the employee in common law since the advertisements were not part of any contract or other legal obligation undertaken by the carrier.

The court went on to say that even if it should assume that there was a duty owed by Liberty Mutual to plaintiff because of the undertaking to perform these services there was still no cause of action unless the risk was increased or there was reliance by plaintiff upon Liberty Mutual performing this service, citing Restatement, 2d, Torts.[1]

---

1. "§ 323. Negligent Performance of Undertaking to Render Services
"One who undertakes, gratuitously or for consideration, to render services to an-

other which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting

West v. Atlas Chemical Industries, Inc., 697 F.Supp. 264 (E.D.Mo.1966). The court stated the issue to be:

" * * * whether the Workmen's Compensation insurance carrier can be subjected to common law liability for negligence with regard to its activities which relate directly to the performance of the insurance task undertaken (i. e., job-site inspections in this case), where the injury suffered is one that would be compensable under the Act."

The court quotes with approval the reasoning in Kotarski, and denied the employee's right to maintain the action, saying:

"Accordingly, we hold that the Workmen's Compensation law provides exclusive remedy as against this defendant with regard to covered injuries."

It should be noted, however, that, unlike the compensation acts in the other cases we have discussed, the Missouri compensation statute provides, Section 287.030(2), "Any reference to the employer shall also include his insurer."

Williams v. United States Fidelity & Guaranty Co., 358 F.2d 799 (4 Cir., 1966). This case involved the construction of the Virginia Act. The plaintiff contended that the employer's carrier was suable under the Act as a third party tortfeasor. The Act provided for suit by the injured employee, or by his employer or his insurer as subrogees of the employee's right to recover damages against "any other party for such injury." The complaint alleged that the carrier "actually and in contemplation of law," had assumed the obligation of safety inspection services of the employer's plant and equipment, and that the carrier's negligent failure to properly perform such inspection services was a proximate cause of the employee's injuries.

The employer had carried on an informal safety program as a part of its regular business routine and the carrier had made periodic inspections of the employer's premises as an adjunct to the employer's program.

The Virginia Supreme Court had interpreted the Virginia Act as limiting recovery *"of all persons engaged in the business* under consideration to compensation under the act, and to deny an injured person the right of recovery against any other person *unless he be a stranger to the business."*

The Court of Appeals affirmed the District Court's dismissal of the employee's action, saying:

"Put another way, the carrier is an employer whenever the claim is one for which compensation is payable. In these situations responsibility of the employer is the responsibility of the insurer, logically warranting equal immunity. Semble, in reason, if the carrier takes the burdens of the employer it should be entitled as well to his benefits. * * *

"The insurer had assumed to do no more than was expected of the employer."

■ From the wording of the Arkansas Act and the general purposes which underlie it, we are persuaded that at least in the situation involved in this case the employer and the insurance carrier are equated and the plaintiff's only remedies are under the Workmen's Compensation Act.

We think that to permit such an action by an employee against the insurance carrier would, as was said in Kotarski, " * * * contradict the basic pattern and purpose of the Act, and should not be done without express legislative authorization."

■ The claim of plaintiff Mrs. Viola Horne for alleged loss of consortium is a derivative action and must fail if the claim of her husband is dismissed. Sisemore v. Neal, 236 Ark. 574, 367 S.W.2d 417 (1963).

from his failure to exercise reasonable care to perform his undertaking, if

"(a) his failure to exercise such care increases the risk of such harm, or

"(b) the harm is suffered because of the other's reliance upon the undertaking."