Salvatore J. **BARTOLOTTA,** Plaintiff-Appellant,

v.

**LIBERTY MUTUAL INSURANCE COMPANY,** Defendant-Appellee.

Robert **PETTERSEN,** Plaintiff-Appellant,

v.

**LIBERTY MUTUAL INSURANCE COMPANY,** Defendant-Appellee.

Nos. 329 and 330, Dockets 32121–32122.

United States Court of Appeals Second Circuit.

Argued March 3, 1969.

Decided May 27, 1969.

**116**

Edward H. Smith, Hartford, Conn., for plaintiff-appellant Bartolotta.

Cole and Cole, Hartford, Conn. (John J. Graham, Boston, Mass., on the brief), for plaintiff-appellant Pettersen.

William J. Doyle, New Haven, Conn., (Wiggin & Dana, John D. Fassett, New Haven, Conn., on the brief), for defendant-appellee.

Before LUMBARD, Chief Judge, SMITH, Circuit Judge, and McLEAN, District Judge.*

J. JOSEPH SMITH, Circuit Judge:

This is an appeal from a judgment of the United States District Court for the District of Connecticut, William H. Timbers, Chief Judge, 276 F.Supp. 66, dismissing two actions brought pursuant to the third-party liability provision of the Connecticut Workmen's Compensation Act.[1] That provision allows an injured employee to accept workmen's compensation benefits and at the same time bring a common law tort action against the third party responsible for the injury, provided only that the negligent party is "someone other than the employer."[2] Our question is whether an injured employee can sue the employer's insurance carrier for failing to discover potentially hazardous work conditions in the course of voluntary safety inspections of the employer's plant.

On Liberty's motion for summary judgment, Judge Timbers held that since "the Connecticut legislature considered the insurer to be the alter ego of the employer," the insurer was immune under these circumstances, and dismissed the complaints. He also held that even if the insurer was not immune, the plaintiffs had not alleged facts sufficient to establish actionable negligence on the part of the insurer. We agree with both holdings, and affirm.

I.

The plaintiffs, Salvatore J. Bartolotta and Robert Pettersen, are employees of the Pratt & Whitney Division of United Aircraft Corporation ("Aircraft"). They sustained personal injuries when they were overcome by argon gas while working in a cylindrical chamber known

---

* Of the Southern District of New York, sitting by designation.

1. § 31–293 provides as follows:
   When any injury for which compensation is payable under the provisions of this chapter has been sustained under circumstances creating *in some other person than the employer a legal liability to pay damages* in respect thereto, the injured employee may claim compensation under the provisions of this chapter, but the payment or award of compensation shall not affect the claim or right of action of such injured employee against such other person, but such injured employee may proceed at law against such person to recover damages for such injury; and any employer having paid, or having become obligated to pay, compensation under the provisions of this chapter may bring an action against such other person to recover any amount that he has paid or has become obligated to pay as compensation to such injured employee. [Italics added.]

2. Like workmen's compensation statutes in many states, the Connecticut Workmen's Compensation Act has abolished all common law actions against an employer for injuries "arising out of and in the course of his employment." § 31–284(a).

as the "moon room." [3]  The defendant, Liberty Mutual Insurance Company ("Liberty"), is the workmen's compensation insurance carrier for Aircraft. As workmen's compensation carrier, Liberty reserved the right to inspect, and did inspect, Aircraft's factory and equipment to determine unsafe conditions and to make "safety" recommendations. The plaintiffs allege that their injuries were caused by Liberty's negligence in failing to make a proper inspection of the "moon room," in failing to report unspecified dangerous conditions to Aircraft, and in failing to recommend and/or require corrective changes.

In dismissing the complaints, Judge Timbers concluded since § 31–340 makes the insurer directly and primarily liable for payment of compensation to injured employees,[4] and since numerous other sections equate the status of the insurer with that of the employer, the insurer was not a third party within the meaning of the Connecticut Workmen's Compensation Act. Judge Timbers also suggested that the insurer would be immune from common law liability as the "legal representative" of the employer within the meaning of § 31–275. That section defines "employer" as one "using the services of one or more employees for pay *or the legal representative of any such employer.*" [Italics added.]

While we agree that the insurer shares the employer's immunity whenever the claim is one for which compensation is payable, we disagree with Judge Timbers' suggestion that the insurer should be immune because it is the "legal representative" of the employer. Whether or not the insurer is immune will depend on the facts in each case, and indeed, we can imagine situations where the insurer would be liable as a third party, regardless of whether it is the "legal representative" of the employer.[5]

While there may not have been any contractual obligation to inspect, it is clear that Liberty made its inspections in its contractual role as workmen's compensation carrier. It is equally clear, as Judge Timbers pointed out, that Liberty did not contract to provide a safety inspection service. Indeed, the complaint alleges only that Liberty was negligent in failing to detect and report an existing dangerous condition *which it did not create.* Under these circumstances, we do not think that the Connecticut legislature ever intended the insurer to be liable under § 31–293. To impose liability here would simply discourage voluntary inspections by workmen's compensation carriers. As another court has remarked, "The only persons who will suffer would be employees and possibly third parties, as well as the public generally." Gerace v. Liberty Mutual Insurance Co., 264 F.Supp. 95, 97 (D.D.C.1966). See also Kotarski v. Aetna Casualty and Surety Co., 244 F.Supp. 547, 558–559 (E.D.Mich.1965), aff'd per curiam, 372 F.2d 95 (6th Cir. 1967).

At the time of Judge Timbers' opinion, no Connecticut court had passed on the question of whether the insurer was subject to third party liability under §

---

3.  Located at the Aircraft plant in Middletown, Connecticut, the "moon room" was a specially designed chamber for treating metals at high temperatures. The plaintiffs were injured while repairing welding equipment used in the "moon room."

4.  § 31–340 provides in pertinent part:
    Every such policy shall contain an agreement by the insurer to the effect that the insurer shall be directly and primarily liable to the employee and, in the event of his death, to his dependents * * * to pay to him or to them the compensation, if any, for which the employer is liable; but payment in whole or in part of such compensation by either the employer or the insurer shall to the extent thereof be a bar to the recovery against the other of the amount so paid.

5.  There would be no immunity for example, if Liberty's messenger negligently runs over a workman while delivering a life insurance policy to a vice-president of the employer. In this hypothetical situation, Liberty would not be immune for the simple reason that its negligence is wholly divorced from any obligation it may have had as workmen's compensation carrier.

31–293. He therefore treated the case as one of first impression, and undertook to decide the question by making "an informed prediction as to what the Connecticut Supreme Court would determine the legislative intent to be if confronted with the question." See Ricciuti v. Voltarc Tubes, Inc., 277 F.2d 809 (2d Cir. 1960).

■■ In addition to Judge Timbers' careful opinion, we now have the benefit of the decision of the Connecticut Superior Court in Barrette v. Travelers Insurance Co., 28 Conn.Sup. 1, 246 A.2d 102 (1968), where the plaintiff complained that the defendant insurer was negligent in failing to inspect allegedly dangerous machinery. The Superior Court sustained a demurrer by the insurer, holding that "the legislature did not intend to differentiate between the employer and the insurer so far as obligations relative to compensation benefits are concerned." *Id.* at 5, 246 A.2d at 105. The Superior Court also sustained the demurrer on the alternative ground that there was no breach of any duty owed by the insurer to the plaintiff. While *Barrette* is not a decision of the highest state court in Connecticut, we are obligated to give it "proper regard" in ascertaining the applicable state law, see Commissioner of Internal Revenue v. Bosch's Estate, 387 U.S. 456, 465, 87 S.Ct. 1776, 18 L.Ed.2d 886 (1967),[6] and since there is absolutely nothing to suggest that the Connecticut Supreme Court would decide otherwise, we think that *Barrette* should be controlling here.[7]

Quite apart from *Barrette,* we think that a fair reading of the Connecticut Workmen's Compensation Act indicates that the Connecticut legislature did not intend to treat the insurer as a third party for injuries arising in the ordinary course of employment. As we observed earlier, § 31–340 makes the insurer directly liable to the employee for compensation regardless of fault. In addition, § 31–293 distinguishes between persons liable to pay "compensation" and persons liable to pay "damages," and as Judge Timbers pointed out, it is doubtful that the Connecticut legislature intended the workmen's compensation insurer to fit both descriptions simultaneously. Moreover, § 31–293 allows the insurer to bring an action against the third-party wrongdoer to recover compensation it has paid, and thus if the insurer could be sued as a third person, it would then have a statutory right to sue itself. In situations where the insurer has not created the unsafe condition, "such subrogation makes logic a foolish game." Mustapha v. Liberty Mutual Insurance Co., 268 F.Supp. 890, 893 (D.R.I.), aff'd per curiam, 387 F.2d 631 (1st Cir. 1967).

The great majority of courts which have construed similar workmen's compensation statutes have held that the insurer is not subject to third-party liability for injuries arising in the ordinary course of employment.[8] While the lan-

6. Although *Barrette* was decided subsequent to Judge Timbers' opinion, our responsibility is to consider "all the available data" in trying to decide what result the highest court of the state would reach. West v. American Telephone & Telegraph Co., 311 U.S. 223, 237, 61 S.Ct. 179, 85 L.Ed. 139 (1940). Cf. Vandenbark v. Owens-Illinois Glass Co., 311 U.S. 538, 61 S.Ct. 347, 85 L.Ed. 327 (1941).

7. We note that the *Barrette* decision was written by Judge Anthony E. Grillo, who, prior to his appointment to the Superior Court, was Workmen's Compensation Commissioner for the Third Congressional District in Connecticut. See 1959 Connecticut State Register and Manual 462.

8. See, for example, William v. United States Fidelity & Guaranty Co., 358 F.2d 799 (4th Cir. 1966) (Virginia Workmen's Compensation Act) ; Donohue v. Maryland Casualty Co., 248 F.Supp. 588 (D. Md.1965), aff'd per curiam, 363 F.2d 442 (4th Cir. 1966) (Maryland Workmen's Compensation Act) ; Kotarski v. Aetna Casualty & Surety Co., 244 F.Supp. 547 (E.D.Mich.1965), aff'd per curiam, 372 F.2d 95 (6th Cir. 1967) (Michigan Workmen's Compensation Act) ; Mustapha v. Liberty Mutual Insurance Co., 268 F. Supp. 890 (D.R.I.), aff'd per curiam, 387 F.2d 631 (1st Cir. 1967) (Rhode Island Workmen's Compensation Act) ; Horne v.

guage may vary somewhat from statute to statute, the reason for giving the insurer immunity is the same in all cases. As the Fourth Circuit has said: "In these situations the responsibility of the employer is the responsibility of the insurer, logically warranting equal immunity. Semble, in reason, if the carrier takes the burdens of the employer it should be entitled as well to his benefits." Williams v. United States Fidelity & Guaranty Co., 358 F.2d 799, 801 (4th Cir. 1966).

■ Plaintiffs' main reliance is on Mager v. United Hospitals of Newark, 88 N.J.Super. 421, 212 A.2d 664 (1965), aff'd, 46 N.J. 398, 217 A.2d 325 (1966), and that case is distinguishable. In *Mager*, an employee who was injured in the course of his employment received negligent medical treatment at a medical clinic operated by the insurance carrier. The New Jersey Supreme Court held that the employee could sue the insurer under the third-party liability provision of the New Jersey Workmen's Compensation Act. In *Mager*, however, the insurer was negligent in providing medical treatment, and as the New Jersey court said, there was simply no reason why the insurer should not be held to "the same standard as would be applicable to any other clinic or hospital." 212 A.2d at 668. We agree. Indeed, we think that *Mager* stands for the sensible proposition that the insurer is not immune when its negligence is quite unrelated to its role as workmen's compensation carrier. As the New Jersey court said: "There is nothing in the Workmen's Compensation Act which requires a compensation carrier, any more than an employer, to maintain and operate a clinic." 212 A.2d at 667. In the instant action, however, Liberty was plainly acting within the scope of its ordinary function as insurer. Insurers commonly inspect. They do so to encourage the employer to take steps to reduce the cost and frequency of accidents and "to provide a method of gathering underwriting information." Evans v. Liberty Mutual Insurance Co., 398 F.2d 665, 666 (3d Cir. 1968). Moreover, the insurer can be said to be making precisely the same kind of inspections that the employer would have been required to make at common law. See Belevicze v. Platt Bros. & Co., 84 Conn. 632, 636, 81 A. 339, 341 (1911). Cf. Donohue v. Maryland Casualty Co., 248 F.Supp. 558, 591–592 (D.Md.1965), aff'd per curiam, 363 F.2d 442 (4th Cir. 1966). Since the employer would have inspected as part of its common law duty to provide a safe place to work, see Belevicze v. Platt Bros. & Co., *supra*, we think the insurer is entitled to equal immunity when making similar inspections, especially where, as here, its conduct does not increase the risk of accident.

## II.

■ Even if the insurer is not immune, the failure to inspect cannot support a negligence action here, because plaintiffs in no way relied upon Liberty's assumption of the "duty" to inspect and because Liberty's voluntary undertaking in no way increased the risk of harm to plaintiffs. While we agree with plaintiffs' proposition that "one who assumes to act, even though gratuitously, may thereby become subject to the duty of acting carefully," [9] we think that Judge Timbers was correct in holding that there is no liability unless the negligent performance or nonperformance is either relied upon by the injured party or increases the risk of harm. See Restatement (Second) of Torts, § 323 (1965); Evans v. Liberty Mutual Insurance Co., *supra*.

The judgment is affirmed.

---

Security Mutual Casualty Co., 265 F. Supp. 379 (E.D.Ark.1967) (Arkansas Workmen's Compensation Act).

9. The quoted words are from the opinion of Judge Cardozo in Glanzer v. Shepard, 233 N.Y. 236, 239, 135 N.E. 275, 276,

23 A.L.R. 1425 (1922). For Connecticut cases imposing liability for negligence arising out of voluntary acts, see Chipman v. National Savings Bank, 128 Conn. 493, 495, 23 A.2d 922, 924 (1942); Zatkin v. Katz, 126 Conn. 445, 11 A.2d 843, 844 (1940).