Joe **KELLER**, Plaintiff-Appellant,

v.

**DRAVO CORPORATION** et al.,
Defendants-Appellees.

No. 30255.

United States Court of Appeals,
Fifth Circuit.

April 28, 1971.

Rehearing Denied June 29, 1971.

William P. Rutledge, Domengeaux, Wright & Bienvenu, Lafayette, La., for plaintiff-appellant.

John G. Torian, II, Davidson, Meaux, Onebane & Donohoe, Lafayette, La., Wilson C. Krebs, Patterson, La., for defendants-appellees.

Before GODBOLD, CLARK and INGRAHAM, Circuit Judges.

CLARK, Circuit Judge:

This appeal challenges summary judgments in favor of a shipyard, its employees and its insurance carriers on the complaint of an injured workman who has received all benefits to which he is currently entitled under the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. § 901 et seq. (1970).[1] Assigned as errors were the following actions of the lower court: Its refusal to declare the exclusive remedy proviso of the Compensation Act unconstitutional; the determination that the insurers may partake of this insulation from liability; the holding that the moored, floating dry dock which contained the vessel on which the injury occurred was not itself a vessel; and, the decision that the vessel on which the accident occurred could owe no warranty of seaworthiness because it was not in navigation at the time of injury. We affirm on all but the issue of insurer liability. We expressly pretermit any holding on that issue and remand that

1. Although the judgment of the district court adjudicated fewer than all the claims as to all of the parties [Dravo remains a party defendant], we entertain the instant appeal in view of the trial court's express determination that there was no just reason for delay and the express direction for entry of judgment. Fed.R.Civ.P. 54(b).

part of the action with directions to require a fuller factual development.

The pleadings and affidavits reflect this factual background. On August 19, 1968, Plaintiff-appellant, Joe Keller, a machinist employed by the defendant J. Ray McDermott & Co., Inc. (McDermott) was injured while removing a motor from a vessel designated as MIXER BOAT NO. 4, owned by another defendant, Dravo Corporation (Dravo). At this time, the vessel was undergoing extensive repairs on a floating dry dock in McDermott's Amelia, Louisiana marine repair facility, having recently been raised from a watery berth at the bottom of a Louisiana bayou following its sinking. Keller began to receive the compensation benefits due under the provisions of the Longshoremen's and Harbor Workers' Compensation Act and subsequently instituted this action.

As originally filed, the complaint set out a cause of action solely against Dravo for its alleged negligence and the unseaworthiness of MIXER BOAT NO. 4. The original complaint was amended to include McDermott; McDermott's President, Vice President, Amelia General Manager, General Superintendent and Safety Man; and, The Travelers Insurance Company and The Travelers Indemnity Company (collectively, Travelers), the insurers of McDermott and the individual defendants. The amended complaint predicated the liability of McDermott upon allegations that the unseaworthiness of the floating dry dock was a proximate cause of Keller's injury and, additionally because McDermott then exercised complete control and possession of the unseaworthy MIXER BOAT NO. 4. Liability as to the individual McDermott employees was hinged upon numerous acts and neglects which, in essense, constituted negligent failure to require McDermott to provide Keller with a safe place to work. Finally, as to Travelers, it was asserted: that the insurance companies had represented to McDermott and its officers that Travelers would inspect for unsafe working conditions and procedures and warn McDermott thereof; that, with Travelers' knowledge, McDermott and the individual defendants relied upon such representation, yet Travelers negligently failed to make such inspections; and that this negligence on the part of Travelers proximately caused Keller's injuries.

Pursuant to Fed.R.Civ.P. 56, McDermott, McDermott's employees, and Travelers made motions for summary judgment which were granted. Summary judgment in favor of McDermott rested on two foundations. First, the floating dry dock was not a vessel; resultantly, no claim of unseaworthiness could arise. Second, MIXER BOAT NO. 4 could not be unseaworthy since it was a vessel out of navigation undergoing major repairs. The District Judge granted the motion of the employees of McDermott, on the ground that 33 U.S.C.A. § 933(i) provided that an injured employee subject to the Longshoremen's and Harbor Workers' Compensation Act shall have no right of action against an officer or employee of his employer. Travelers motion, which was based solely on the pleadings without affidavit or other factual fleshing, was granted for two reasons: first, Travelers owed no duty to Keller, since the insurance coverage was issued in favor of McDermott; and, second, the insurers, just as their insureds—both corporate or individual —would have immunity under the above provision of the Compensation Act.

## I. THE CONSTITUTIONALITY OF 33 U.S.C.A. § 933(i)

Keller contends that 33 U.S.C.A. § 933(i) will not pass constitutional muster since it makes management immune from damage suits for its maritime torts against repair yard workers. As ground for this contention, it is asserted that this prohibition is completely devoid of any rational basis and denies the injured employee a property right without due process of law in violation of the Fifth and Fourteenth Amendments. More succinctly stated, no *quid pro quo* existed so as to make the compensation

scheme constitutional. This section provides:

> The right to compensation or benefits under this chapter shall be the exclusive remedy to an employee when he is injured, or to his eligible survivors or legal representatives if he is killed, by the negligence or wrong of any other person or persons in the same employ: *Provided*, That this provision shall not affect the liability of a person other than an officer or employee of the employer.

■ We reject Keller's contention that he was unconstitutionally deprived of a property right—the right to sue his employer and fellow-servants. Many years ago, when called upon to consider whether the Federal Employer's Liability Act superseded certain common law rights, the Supreme Court declared:

> A person has no property, no vested interest, in any rule of the common law. That is only one of the forms of municipal law, and is no more sacred than any other. Rights of property which have been created by the common law cannot be taken away without due process; but the law itself, as a rule of conduct, may be changed at the will * * * of the legislature, unless prevented by constitutional limitations. *Mondou v. New York, New Haven & Hartford Railroad Co.*, 223 U.S. 1, 32 S.Ct. 169, 175, 56 L.Ed. 327 (1912).

This principle was explicated by later cases. While conceding that one can have no vested interest in any rule of common law, these cases emphasized that a right created under such a rule which has been perfected could not be taken away without being violative of the Fifth and Fourteenth Amendments.

*Coombes v. Getz*, 285 U.S. 434, 52 S.Ct. 435, 76 L.Ed. 866 (1932). On the other hand, one cannot be heard to question the sufficiency of due process if the rule of law, which merely held the potential to create a property right, was changed before any right vested. This latter situation is precisely what obtains in the instant case.

Keller's right to sue his employer, its officers and his fellow-employees had not accrued and become vested before it was abolished by the limitation of § 933(i).

■ The abolition of non-vested rights is especially innocuous if, as here, one remedy is substituted for another. *New York Central Railroad Co. v. White*, 243 U.S. 188, 37 S.Ct. 247, 61 L.Ed. 667 (1917). The limitation contained in § 933(i) is in no way violative of the Fifth and Fourteenth Amendments. Since the subsection granting immunity is constitutional, the trial judge was correct in granting a motion of summary judgment in favor of the individual McDermott employees.

## II. THE CLAIM AGAINST THE INSURER

On the bare basis of two sentences in an amended complaint [2] which presently stand undenied and unamplified by affidavit, deposition or any other fact generating process, this court is pressed to rule upon a legal issue of broad policy-making significance to insurance funding and safety inspection procedures under the Longshoremen's and Harbor Workers' Compensation Act. So far as is disclosed by the research of the parties and the independent research of this court, the precise question in issue has never been determined.

---

2. "In the alternative and as a separate cause of action, Travelers Insurance Company and Travelers Indemnity Company represented unto McDermott and the individual defendants that they would undertake to inspect the unsafe working conditions and procedures and warn McDermott thereof; McDermott and individual defendants relied upon said representation; the Travelers Companies knew or should have known of said reliance and yet negligently failed to inspect and detect the unsafe working conditions and procedures, rules, regulations and customs that were in force at the time of plaintiff's injury.

"Travelers' negligence was a proximate cause of plaintiff's injuries."

Keller bases his claim principally upon the recent holding of this circuit in Hill v. U. S. F. & G. Co., 428 F.2d 112 (1970). *Hill*, while helpful in analysis, is not controlling. It concerned suits by hotel guests against an insurer, based upon alleged negligent failure of the insurer to carry out representations to the hotel company that it would take certain safety measures for guest security. No exclusive remedy clause such as that embodied in § 933(i), was faced in that decision.

The decisional law which has considered insurer liability for failure to make inspections in workmen's compensation act situations, has been widespread and has produced differing results. Although the majority of decisions have allowed the insurer to partake of the employer's immunity,[3] a significant number of cases have held that the insurer stood in no different position from any other negligent third party.[4] There is authority to suggest a basis for reconciling these different results, which would analyze the statute to find whether an insurer was expressly categorized as an employer who partook of that act's exclusive remedy protection. *See* West v. Atlas Chemical Co., 264 F.Supp. 697 (E.D.Mo.1966).

In the case at bar, we simply decline to resolve this problem on the basis of conclusory pleading allegations which may prove to be nothing more substantial than lawyer talk. For example, in Evans v. Liberty Mutual Ins. Co., 398 F.2d 665 (3d Cir. 1968), a case cited by the insurers here, our sister circuit expressly declined to overrule Mays v. Liberty Mutual Ins. Co., *supra n.* 4, because the facts developed in the *Evans* record clearly demonstrated that a cause of action did not exist.

Without intimating any views on what the facts may turn out to be and expressly pretermitting any resolution of the ultimate legal issue, we remand this cause to the district court with directions to require the plaintiff and the defendant insurance carriers to join issue on the facts so as to enable that court to determine: what representations, if any, Travelers made to Mc-Dermott or to its officials; what reliance, if any, McDermott or its officials placed upon such representations; what actions or omissions on the part of the employer resulted from such reliance; what actual or imputed knowledge Travelers had of such reliance by McDermott or its officials; and, what proximate cause relationship existed between any actions or inactions on the part of Travelers and the injury to the plaintiff.

If after a sufficient factual development the basis for a third-party action has been demonstrated to exist in the case at bar so that the underlying legal issue is present and ripe for adjudication, the district court should then make that appropriate determination on the basis of a real case rather than deciding it as an abstract principle of law.

## III. THE DRY DOCK—A VESSEL?

In support of its motion for summary judgment, McDermott produced the affi-

3. Modjeski v. Atwell, Vogel & Sterling, Inc., 309 F.Supp. (D.Minn.1969); Mustapha v. Liberty Mut. Ins. Co., 268 F. Supp. 890 (D.R.I.) aff'd per curiam 387 F.2d 631 (1st Cir. 1967); Hughes v. Maryland Cas. Co., 229 Mo.App. 472, 76 S.W.2d 1101 (1934); Sarber v. Aetna, 23 F.2d 434 (9th Cir. 1928); Schulz v. Standard Acc. Ins. Co., 125 F.Supp. 411; Bartolotta v. Liberty Mut. Ins. Co., 411 F.2d 115 (2d Cir. 1969); Kotarski v. Aetna, 244 F.Supp. 547 (E.D.Mich.), aff'd per curiam, 372 F.2d 95 (6th Cir. 1967); Williams v. United States F. & G., 358 F.2d 799 (4th Cir. 1966); Horne

v. Security Mut. Cas. Co., 265 F.Supp. 379 (E.D.Ark.1967); Donohue v. Maryland Cas. Co., 248 F.Supp. 588, aff'd 363 F.2d 442 (4th Cir. 1966).

4. Nelson v. Union Wire Rope Corp., 31 Ill.2d 69, 199 N.E.2d 769 (1964), *see also:* Id., 39 Ill.App.2d 73, 187 N.E.2d 425 (1963); Fabricius v. Montgomery Elevator Co., 254 Iowa 1319, 121 N.W.2d 361, 93 A.L.R.2d 591 (1963); Mays v. Liberty Mut. Ins. Co., 323 F.2d 174 (3d Cir. 1963); Smith v. American Employers Ins. Co., 102 N.H. 530, 163 A.2d 564 (1960).

davit of its shipyard superintendent to factually negate that portion of Keller's complaint grounded upon the assertion that the floating dry dock in which MIXER BOAT NO. 4 was undergoing repairs was a vessel which owed Keller a warranty of seaworthiness. Keller thereupon filed a counter-affidavit designed to refute the operative facts contained in McDermott's proof. Based upon these two affidavits, the district judge granted McDermott's motion for summary judgment on the grounds that, under the undisputed material facts, the dry dock in the instant case was, as a matter of law, not a vessel and therefore no warranty of seaworthiness arose.

■ The opposing affidavits do not deal with precisely the same points, and they differ about some points common to both. McDermott, pointing to the absence of motor power, asserts that the dry dock was neither designed nor used for navigation. Keller, on the other hand, deposed that the dry dock was equipped with various navigational aids and that it was frequently moved about. Nevertheless the two affidavits raise no dispute on what we regard as the material and critically dispositive facts. First, there is no dispute that at the time of the mishap the dock was engaged in its primary function as a dry dock. Moreover, there is no dispute on the issue that at the time of Keller's injury it was engaged in this function and that it was moored by chains and cables to McDermott's dock.

While we are unwilling to promulgate an absolute rule of law that a floating dry dock can never be a vessel, we are bound under the facts in the instant case by our decisions in Chahoc v. Hunt Shipyard, 431 F.2d 576 (5th Cir. 1970) and Atkins v. Greenville Shipping Corp., 411 F.2d 279 (5th Cir. 1969). In these two cases this circuit clearly embraced the proposition that, as a matter of law, a floating dry dock is not a vessel *when it is moored and in use as a dry dock.* Since the undisputed material facts indicate that the instant dry dock occupied the above status at the time of Keller's injury, the grant of summary judgment by the trial judge was proper.

## IV. THE MIXER BARGE—A VESSEL IN NAVIGATION?

Finally, Keller asserts various facts create a cause of action against McDermott for a breach of warranty that MIXER BOAT NO. 4 was seaworthy. Keller alleges that McDermott had a sufficient possessory interest in the vessel while it was aboard the dry dock to qualify McDermott as an owner, *pro hac vice.* Based upon the claim that the barge was a vessel in navigation, he asserts that a warranty of seaworthiness was owed to those working aboard it. Finally he concludes this warranty was breached with resultant harm to him while he was in the service of the vessel performing a seaman's work.

The district judge in granting summary judgment in favor of McDermott on the issue of the barge's seaworthiness, based his ruling on Dravo's answers to Keller's interrogatories and an affidavit of McDermott's shipyard superintendent. The answers to interrogatories indicated that the barge had been refloated and, with the aid of stripping pumps and a pumping crew, towed to McDermott's repair yard to be put in a seaworthy condition once again. The documentation further indicated that when Keller was hurt the mixer barge was in dry dock undergoing substantial repairs to its hull. A section of the hull measuring 26½ feet by 10 feet had to be removed to repair the damage done at the time of the sinking. During the repair period, the mixer barge could not have possibly been placed in the water without sinking. Keller placed no affidavits before the district court to refute the above facts.

Keller now asserts that this showing in support of McDermott's motion for summary judgment was insufficient to demonstrate that no genuine issue of material fact existed as to the withdrawal of MIXER BOAT NO. 4 from navigation, by presenting two issues.

First, does the language of Fed.R.Civ.P. 56(e) require the party who opposes the grant of summary judgment to affirmatively present proof of facts when a motion for summary judgment has been made and supported by proper documentation? Allegations in pleadings normally cannot create a fact issue which will defeat a motion for summary judgment supported by affidavits which negate those allegations. This is the clear intent of Rule 56(e) which provided in pertinent part that "when a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleadings. * * *" This rule intends to permit affidavits to pierce the allegations in an opponent's pleadings and to require him to come forward with counter-proof in order to show genuine issues of fact. This is the approach clearly adopted by this circuit. Scarboro v. Universal C.I.T. Credit Corp., 364 F.2d 10 (5th Cir. 1966). While it is true that an exception to this general rule is found where the evidentiary matter in support of the motion does not establish the absence of a genuine issue of fact, *see* Advisory Committee Note of 1963 to Subdivision (e) of Rule 56, this exception is not pertinent here.

This brings us to the second issue, which requires that we determine whether the facts contained within the documentation considered by the district court were sufficient to eliminate all genuine issues of fact as to the navigational status of the mixer barge. The uncontroverted material facts indicate that the mixer barge had sunk, been refloated and maintained afloat by pumps solely for the purpose of being taken to McDermott's dry dock, and was there undergoing substantial repairs essential to restore it to a seaworthy condition. Dravo, the ship owner, had relinquished control over the vessel and Keller's orders came from McDermott as the repair contractor. These facts furnish ample support for the conclusion of the trial judge that MIXER BOAT NO. 4 was a vessel out of navigation, hence no warranty of seaworthiness could exist. Johnson v. Oil Transport Company, Inc., 440 F.2d 109 (5th Cir. 1971) [No. 28418, March 12, 1971].

## V. CONCLUSION

The Summary Judgments entered March 6, 1970 in favor of McDermott, its individual officers and employees, are affirmed. The Summary Judgment of that date in favor of Travelers Insurance Company and Travelers Indemnity Company is vacated and this cause is remanded for further proceedings not inconsistent with Part II hereof. Three-fourths of the costs of this appeal are assessed against appellant and one-fourth thereof is assessed against appellees, Travelers Insurance Company and Travelers Indemnity Company.

Affirmed and remanded.