190 N.J. Super. 597 (1983)
464 A.2d 1193
MARY TREMONTE, PETITIONER-RESPONDENT,
v.
JERSEY PLASTIC MOLDERS, INC., RESPONDENT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued June 14, 1983.
Decided August 3, 1983.
*598 Before Judges FRITZ, JOELSON and PETRELLA.
George J. Kenny argued the cause for appellant (Connell, Foley & Geiser, attorneys; George J. Kenny, of counsel; Patrick J. McAuley, on the brief).
*599 Charles J. Lambusta argued the cause for respondent.
The opinion of the court was delivered by FRITZ, P.J.A.D.
This is an appeal by the employer from an adverse judgment entered in the Division of Workers' Compensation. We affirm in part and reverse in part.
Although the compensability of the accident is contested, the fact of its occurrence is not. Nor is the manner of the happening the subject of any evidence contradicting petitioner's version. She testified that she had reached the building of her employer on her way to work in the early morning dark. As she walked on the sidewalk adjacent to the building and between it and the street, she hurried to get to the building door because, having been "already mugged about three times on that same street," she was apprehensive about "two colored guys coming down that way [who] were looking at me laughing." She fell on the projection of a raised slab of sidewalk and was injured. The testimony is uncontroverted that the sidewalk "comes to a dead end," obviously at the far end of the employer's building. The inference is inescapable that for all practical purposes this sidewalk is used only with relation to the employer's business.
We pause here to dispose of the employer's argument that the so-called "going and coming" rule precludes compensability. The judge of compensation believed this aspect of the litigation was controlled by DiNardo v. Newark Bd. of Ed., 118 N.J. Super. 536 (App.Div. 1972) and so do we. This issue is without merit. R. 2:11-3(e)(1)(D), (E).
Counsel for petitioner, ostensibly motivated by his discovery "that respondent insurance company in this case would not pay the case on a compensation basis and what the position was of Jersey Plastic Molders," filed both a compensation action and a common law negligence action. The latter action, it appears, also included as a defendant, "an architectural construction firm which allegedly built the structure and the sidewalk where the *600 petitioner fell." When, on the day of trial, "the architectural construction company was let out of the case on a motion for summary judgment, because of the ten year statute," the employer (or its liability insurance carrier) settled the common law suit by a voluntary payment. The workers' compensation petition was tried to a conclusion and a judgment was entered for petitioner.
The employer insists that petitioner's "recovery from Jersey Plastic by way of settlement of a Superior Court action bars her from proceeding in worker's compensation." It expressly eschews any contention that "an injured employee may not file a complaint in Superior Court and also a claim in Worker's Compensation Court [sic] in order to preserve the potential avenues of recovery when there is reason to doubt, as there was herein, whether an action is compensable under Worker's Compensation." But, relying on the 4-2 decision reversing both the compensation board and the Appellate Division in Martin v. C.A. Productions Company, 8 N.Y.2d 226, 168 N.E.2d 666, 203 N.Y.S.2d 845 (Ct.App. 1960), it insists that the prior settlement of the common law action should be a bar to the compensation claim. We disagree.
We do not at all doubt the proposition, derived from the statute, that the compensation remedy is exclusive. N.J.S.A. 34:15-8. Nor do we doubt that in the compensable accident situation, as we believe this to have been, the employer is simply not liable at common law. But this right to have the common law action dismissed on that ground is not one that cannot be waived. No public policy exists opposing the settlement of civil actions. In fact, the settlement of litigation ranks high in our public policy. State v. Gibson, 68 N.J. 499, 511 (1975); Jannarone v. W.T. Co., 65 N.J. Super. 472, 476 (App.Div. 1961), certif. den. sub nom. Jannarone v. Calamoneri, 35 N.J. 61 (1961). The employer did not undertake to assert that right. Rather, it *601 chose to buy its way out of that litigation and thereby waived its right to defend. In a word, it volunteered a payment which it did not need to make. "Waiver is the voluntary relinquishment of a known right evidenced by a clear, unequivocal and decisive act from which an intention to relinquish the right can be based." Mitchell v. Alfred Hoffman, Inc., 48 N.J. Super. 396, 405 (App.Div. 1958), certif. den. 26 N.J. 303 (1958). A clearer case of waiver would be hard to contrive.[1]
It would be unrealistic not to acknowledge that this settlement was undoubtedly the doing of the employer's liability insurance carrier, a different entity from the workers' compensation carrier. But we cannot let this fact distract us from the predominant fact that the employment contract, and the exclusive remedy provision included therein by operation of law, are between the employer and the employee. That compels us to regard the litigation in both forums and the settlement as between the employer and employee. Otherwise we might well have divergent results in cases where the same carrier was on both risks or where the employer was self-insured for either or both risks. Our approach is not as out of tune with reality as might first appear. Both the liability carrier and the compensation *602 carrier may provide in their policies for such things as notice of the conflicting litigation and unquestionably, with a little imagination, for remedies to accommodate the situation.
As noted, the result we reach does not offend public policy in countenancing the waiver by the employer and permitting it to settle a common law action despite the exclusive workers' compensation remedy. However, to permit the employer to enter into such a settlement with an employee at the risk of jeopardizing the employee's workers' compensation remedy would affront public policy. "The policy of the compensation law is that compensation shall be paid for every compensable experience, and that no employee shall waive what is due him. See Esso Standard Oil Co. v. Holderman, 75 N.J. Super. 455, 467-468 (App.Div. 1962), affirmed o.b. 39 N.J. 355 (1963) [, app. dism. 375 U.S. 43, 84 S.Ct. 148, 11 L.Ed.2d 107 (1963)]." Accident Index Bureau, Inc. v. Hughes, 46 N.J. 160, 164 (1965). For that reason, we join with the New York Compensation Board, the Appellate Division of the Supreme Court of New York and the dissenters in the case, and we reject the estoppel theory of the majority in Martin v. C.A. Productions Company, supra.[2] We believe that our State's public policy and deference to the obvious legislative intent which manifests this policy (see, for example, N.J.S.A. 34:15-39 and -50) warrants our adoption of the position of the dissent in Martin.
We turn finally to the argument of the employer that it should in any event receive credit as against the compensation award for the payment made in settlement of the common law action. The compensation judge denied this on the ground that the only provision for a third party lien is in N.J.S.A. 34:15-40 *603 and inasmuch as this "speaks specifically of a third party liable to the employee" and here "there was no third party involved," no right to a lien by the employee attached. Here we are persuaded by the reasoning of Anderson v. Wachter, 283 Minn. 273, 167 N.W.2d 719 (Sup.Ct. 1969) which is squarely on point, including the fact that the Minnesota statutes provide for third-party liens. In that case the Workmen's Compensation Commission was unanimous in a determination giving credit for the settlement. It explained its action thusly:
"The referee in his memorandum indicated that the employer is not a `third-party' under the terms of M.S.A. 176.061, and therefore the compensation carrier is not entitled to the benefit of the $6,000. However, we do not believe that M.S.A. 176.061 has any application to this matter. Wachter was at all times, the primary party liable to Anderson. And he has had thrust upon him the obligation to buy insurance to protect his compensation and common law liability. In the instant case, Wachter was liable either under the compensation act, or under common law liability. He was not liable under both premises. Either Anderson was in the scope of his employment at the time of the injury, and Wachter was liable under the Workmen's Compensation Act, or Anderson was not in the scope of his employment, and Wachter's liability was at common law. The payment of the $6,000 albeit by Wachter's common law insurer, was a payment against Wachter's liability under whatever theory it was ultimately based.
"Thus, under the facts of this case, the compensation act, and principles of equity, the compensation insurer, on behalf of Wachter, is entitled to take credit for $6,000." [283 Minn. at 276, 167 N.W.2d at 721.]
The Supreme Court found this right in principle. It said:
It is true that Iowa National [the liability carrier] had no contractual obligation to pay anything on account of the employer's workmen's compensation exposure. The payment having been made on behalf of the employer, the commission was justified in treating the payment by the liability insurer as a payment in behalf of the employer on account of whatever exposure he had arising out of the accident. It is true that the employee, had he pursued his common-law action to decision, might well have received a verdict greater in amount than the award to which he will be entitled under the Workmen's Compensation Act. But a claimant cannot use the power of litigation, given to him for the purpose of satisfying his just demands, as leverage for the purpose of securing payments depending upon which of the alternate processes afforded by the law he avails himself of first. [283 Minn. at 278, 167 N.W.2d at 722.]
*604 We believe this result achieves equity, always a prime target in matters of litigation, for precisely the reasons set forth in Anderson. It has the virtue of evenhandedness. To the extent we treat the employer and the insurance company as one in the settlement issue, we treat them as one here. The employee receives no less than that to which he is entitled, albeit from two sources. Nor does he receive any more.[3]
Here, too, we recognize that different carriers are on the different risks and the result is that the liability carrier is in fact paying a portion of the compensation award. This does not seem at all unfair when it is remembered that the liability carrier hedged its bet in the liability case by a voluntary payment.
We conclude by further agreement with Anderson in its limitation of the credit to the net amount received by the employee. We adopt both the rationale and the result there set forth:
The Workmen's Compensation Commission treated the full $6,000 paid in the settlement as a credit against the liability of the employer's obligation under the Workmen's Compensation Act. We believe that the credit should be limited to the sum of $4,000, which was the net amount received by the employee. The other $2,000 was allocated to the employee's attorney as his share of the consideration paid for the stipulation to dismiss. While we do not feel that the employee should be charged with this amount which he did not receive, we think it entirely proper for the commission to take into consideration the receipt of this sum by his attorney when allocating his attorney's fees on account of the compensation proceedings. [283 Minn. at 278, 167 N.W.2d at 722.]
We affirm in part and reverse in part in accordance with the foregoing. The matter is remanded to the Division of Workers' Compensation for establishment of the credit to be applied and for reconsideration of the fees and allowances. We do not retain jurisdiction.
NOTES
[1] Counsel for petitioner attached to his letter brief the release from petitioner to her employer given in connection with the settlement. The employer has objected on the ground that the release was not part of the record below and no motion to supplement was made. The objection is well taken. The inclusion of the release was a gross violation of appellate practice and rules. Middle Dep't Insp. Agency v. Home Ins. Co., 154 N.J. Super. 49, 56 (App.Div. 1977), certif. den. 76 N.J. 234 (1978). Because our consideration of the appeal must be confined to the record made in the trial court, Wallach v. Williams, 52 N.J. 504 (1968), we have not considered the release. We note, however, that the record makes manifest, on cross-examination of petitioner by counsel for the employer, the fact that the common law action was settled between the employee and the employer. It would also appear that counsel for petitioner represented to the compensation judge that the release given in the settlement "specifically indicated that the release should not be construed as a waiver or release  release of their rights with respect to a Workers' Compensation action now pending bearing Claim Petition 79-10540."
[2] Our refusal to consider the release here given and received, for reasons set forth in n. 1 above, requires that we treat this matter as on all fours with Martin, although it most probably is distinguishable.
[3] See the reference in the dissent in Martin, supra, to the "full justice" done in allowing the employer credit.