232 N.J. Super. 519 (1988)
557 A.2d 1019
ALFREDO CORTES AND CARMEN CORTES, PLAINTIFFS-RESPONDENTS,
v.
INTERBORO MUTUAL INDEMNITY INSURANCE COMPANY, DEFENDANT-APPELLANT, AND DR. WALTER FLAX AND DR. JACK SIEGEL, DEFENDANTS.
Superior Court of New Jersey, Appellate Division.
Argued December 16, 1987.
Decided July 8, 1988.
Before Judges GAULKIN, GRUCCIO and D'ANNUNZIO
Peter A. Piro argued the cause for appellant (Haskins, Hack, Piro, O'Day, Merklinger & Wallack attorneys, Peter A. Piro on the brief).
*520 Robert B. Blackman argued the cause for respondents (Salomon & Blackman, attorneys).
The opinion of the court was delivered by D'ANNUNZIO, J.A.D.
Defendant (Interboro), a workers' compensation insurance carrier, appeals a judgment in the amount of $110,000 entered against it on a jury verdict in the Superior Court, Law Division.
Plaintiff, Alfredo Cortes (Cortes), sustained an injury arising out of and in the course of his employment. Interboro was the workers' compensation carrier for Cortes' employer. Cortes' claim against Interboro was based on an alleged delay in providing necessary medical treatment. On appeal, Interboro's sole contention is that Cortes' exclusive remedy was under the Workers' Compensation Act and, therefore, the Law Division lacked jurisdiction.[1]
Defendant injured his lower back in June 1981 in a lifting incident. He commenced treatment under Dr. Fernand and returned to work in August 1981, but in September 1981, his symptoms became exacerbated. In October 1981, Fernand recommended a CAT scan and sought authorization from Interboro. In February 1982, Interboro authorized a myelogram which was performed in March 1982. In April 1982 Fernand excised a herniated disc between L-4 and L-5.
Cortes' symptoms worsened after the surgery. Dr. Fernand, in November 1982, was of the opinion that Cortes' continuing problems were the result of scar tissue or a new disc herniation at the L-5, S-1 level. Fernand testified that it was necessary to determine whether the problem was scar tissue or a new disc herniation. If scar tissue was the problem, then surgery would be contraindicated. If Cortes' difficulty was the result of a new disc herniation, then surgery was indicated and there was *521 a substantial probability of a good result. Consequently, in January 1983, Fernand asked Interboro for authority to perform diagnostic tests, including a myelogram.
Interboro's response was to refer Cortes to Interboro's consultants, Dr. Siegel and Dr. Flax, for a second opinion. Dr. Flax advised Interboro that the diagnostic procedures were unnecessary and, therefore, Interboro did not authorize them.[2]
Based on the evidence, the jury could have found that Interboro's consultants changed their minds about the necessity of the diagnostic procedures in August 1983, but that Interboro persisted in its refusal to give authority for a myelogram. The myelogram eventually was performed in December 1983. Dr. Fernand testified that the myelogram established that Cortes' symptoms were the result of a "recurrent L-4, 5 left with extruded disc fragment", but by that time, December 1983, it was too late for effective surgical intervention. According to Dr. Fernand, the passage of time, allegedly due to Interboro's failure to authorize the diagnostic tests, made it unlikely that the surgery would yield a good result. Dr. Fernand also testified that development of a recurrent disc herniation was one of the risks of disc surgery and that the "ten percent failure rate includes the recurrent disc herniation." Dr. Fernand's testimony established that the second disc problem was related to the compensable initial disc herniation.
The substantive issue is whether the exclusive remedy for Interboro's refusal to authorize diagnostic tests was by a proceeding within the Division of Workers' Compensation (Division).
N.J.S.A. 34:15-15 obligates the employer to provide necessary medical treatment. The Division's control and superintendence of the employer's treatment obligation is emphasized in *522 that statute. Thus, an employer is not obligated to furnish or to pay for doctors' services in excess of $50 or for hospital services in excess of that amount unless the worker files a petition with the Division and the Division determines "that such physicians' and surgeons' treatment and hospital services are or were necessary, and that the fees for the same are reasonable and shall make an order requiring the employer to pay for or furnish the same."
Regulations governing the Division's practice implement N.J.S.A. 34:15-15 through the authorization of a petitioners' motion for temporary disability payments or medical benefits. N.J.A.C. 12:235-5.2. The regulation, in subsection (d), requires that the motion be heard "peremptorily within 30 days" after filing and that a decision be rendered within 15 days of the hearing. Substantively, subsection (e) of the regulation eases the petitioners' burden. It provides that affidavits and medical reports filed in support of the motion "shall constitute a prima facie case...."
N.J.S.A. 34:15-15 also authorizes a worker to secure necessary treatment if the employer refuses to furnish it and to seek payment or reimbursement from the employer after treatment has been rendered.
Thus, the legislature has established a right to treatment and a remedy within the Division to enforce that right. In Rothfuss v. Bakers Mut. Ins. Co., 107 N.J. Super. 189 (App.Div. 1969), this court, in affirming dismissal of the first two counts of the complaint held:
The first and second counts of the complaint charge defendant with failing to furnish prompt and adequate medical treatment. The remedy for such alleged wrongs lies within the provisions of the Workmen's Compensation Act, N.J.S.A. 34:15-15 and 34:15-15.1, and a suit at common law cannot be maintained N.J.S.A. 34:15-7 and 34:15-8.
Recently, in Dunlevy v. Kemper Ins. Group, 220 N.J. Super. 464 (App.Div. 1987), certif. den. 110 N.J. 176 (1988), we held that the Division had exclusive jurisdiction to consider a claim that a *523 compensation carrier had wrongfully with intent to harm terminated plaintiff's temporary disability benefits.
Cortes contends that his common law claim against Interboro is similar to the claim alleged in the third and fourth counts of the complaint in Rothfuss and to the common law claim upheld in Mager v. United Hospitals of Newark, 88 N.J. Super. 421 (App.Div. 1965), aff'd. o.b. 46 N.J. 398 (1966).
Although, as previously indicated, we affirmed dismissal of the first and second counts in Rothfuss, we reversed the judgment, rendered on the pleadings, in favor of defendant on the third and fourth counts. Those counts alleged that the plaintiff was admitted to a hospital at the compensation carrier's request for treatment by Dr. Donahue who was employed by the carrier, that Dr. Donahue recommended surgical removal of an intervertebral disc and that the carrier refused to authorize the operation.
In Mager we held that a compensation carrier maintaining and operating its own clinic for the treatment of injured workmen was subject to an action at law for its alleged negligent treatment.
It is clear from our opinions in Mager and in Rothfuss, as to the third and fourth counts, that the jurisdiction of our law courts was posited on the carriers' undertaking to treat, a duty not imposed on them by the Workers' Compensation Act. Mager, 88 N.J. Super. at 428. "The recovery which plaintiff seeks is for allegedly negligent medical and surgical treatment given, not pursuant to a statutory or insurance policy obligation, but in the course of an independent undertaking, namely, the maintenance and operation of the clinic." Ibid.
In the present case, Interboro did not undertake to treat Cortes and did not select or otherwise impose Dr. Fernand on him. Interboro exercised its right to question and evaluate Dr. Fernand's treatment plan. In doing so it acted responsibly in retaining non-treating consultants. Because Interboro did not undertake to direct treatment of Cortes, Interboro assumed no *524 duty to Cortes beyond its duty under the compensation act and its insurance policy.
In light of Interboro's refusal to authorize the diagnostic tests, Cortes had two available alternatives. He could have had the tests performed and sought reimbursement or he could have moved in the Division to compel Interboro to provide them pursuant to N.J.A.C. 12:235-5.2.
We agree with Rothfuss and Dunlevy and we conclude that Interboro had the right to a dismissal of this action on the ground that Cortes' exclusive remedy was in the Division. However, we are troubled by Interboro's failure to pursue this right. Although Interboro pleaded in its answer that the complaint was "barred by the Worker's [sic] Compensation Act" and repeated these assertions in its factual and legal contentions filed with its pre-trial memorandum, R. 4:25-1(b)(4), Interboro submitted to the trial of Cortes' claims in the Law Division.
Interboro did not seek a determination of its pleaded defense before trial. See R. 4:6-3. Although the bar of the compensation act was mentioned in Interboro's factual and legal contentions, the alleged lack of jurisdiction was not included as an issue in the pre-trial order. R. 4:25-1(b)(7).
Paragraph 11 of the pre-trial order required the filing of briefs and further provided that "[a]ny issue not briefed will be considered abandoned." Interboro's counsel filed no brief.
At trial, immediately prior to jury selection, counsel and the trial judge discussed the issues in the case. Interboro's counsel did not mention the bar of the compensation act. Interboro's motion for a directed verdict at the close of plaintiff's case and its post-verdict motion for a new trial did not include the bar of the compensation act as a ground for either form of relief.
Colloquy at the conclusion of the trial regarding plaintiff's requests to charge demonstrates that Interboro intentionally submitted to the Law Division jury Cortes' claim that Interboro's inaction exacerbated his work-connected disability.
*525 If the jurisdictional issue were one of first impression, we would reject Interboro's contention on the ground that its failure to seek a determination that this action was barred by the compensation act and its willingness to submit to the jury the issue of its responsibility for the progression of Cortes' original injury constitute clear, unequivocal and decisive acts from which an intention to relinquish the jurisdictional defense can be inferred. See Tremonte v. Jersey Plastic Molders, Inc., 190 N.J. Super. 597, 601 (App.Div. 1983).
But this is not a case of first impression. The jurisdictional issue was considered in Estelle v. Board of Education of Red Bank, 14 N.J. 256 (1954). In that case, Estelle, a school janitor, developed a serious lung condition which he contended was caused by his occupational exposure to coal dust. Estelle filed a compensation claim petition in October, 1950. In June 1951, he instituted a personal injury tort action against his employer in the Law Division. Defendant pleaded, inter alia, that Estelle's exclusive remedy was in the Workers' Compensation Division.
In February 1952, defendant's motion to dismiss the compensation petition was granted on the ground that Estelle's disease preceded the effective date of the statute which made occupational diseases compensable, L. 1949, c. 29.
In June 1952, Estelle recovered a judgment of $80,000 in the Law Division. Although the Appellate Division reversed and remanded for a new trial, defendant pressed its contention in the Supreme Court that the Law Division lacked jurisdiction. The Supreme Court rejected Estelle's argument that defendant, having sought and been granted a dismissal of the compensation petition, could not deny the jurisdiction of the Law Division.
The Supreme Court ruled that Estelle's lung condition was compensable and that the Division erred when it dismissed the petition. The Court also ruled that "[i]t is, of course, axiomatic *526 that jurisdiction cannot be bestowed by consent or acquiescence (citations omitted)," Id. at 260-261, and held that the Law Division lacked jurisdiction.[3]
Cortes' claim was clearly compensable in the Division. See Ducasse v. Walworth Manufacturing Co., 1 N.J. Super. 77 (App.Div. 1940) (increased disability caused by lower back surgery is compensable); Bisonic v. Halsey Packard, Inc., 62 N.J. Super. 365 (App.Div. 1960), aff'g. 58 N.J. Super. 166 (Co.Ct. 1959) (cardiac disability is compensable when it was precipitated by surgery to repair compensable hernia); Nation v. Certainteed Corp., 84 Cal. App.3d 813, 149 Cal. Rptr. 62 (Ct. of Appeal 1978) (aggravation of industrial injury by negligent medical treatment is compensable); Larson, The Law of Workmen's Compensation, § 13.21 (1985).[4] Dr. Fernand's testimony and the medical reports available before Cortes commenced this action established that Cortes' post-operative symptoms were the result of a recurrent disc herniation at L-4, L-5, the site of the initial injury. Moreover, Interboro's liability was premised on its failure to provide for treatment of a compensable injury; Interboro had no duty to treat or provide the tools to diagnose non-compensable injuries. Accordingly, this was not a case in which jurisdiction of the Division was problematic and dependent upon ultimate findings of fact. See Singer Shop-Rite, Inc. v. Rangel, 174 N.J. Super. 442, 445 (App.Div. 1980), certif. den.. 85 N.J. 148 (1980) (law courts have jurisdiction to decide substantial questions of the applicability of workers' compensation statute).
We perceive no significant legal distinction between this case *527 and Estelle[5] and, therefore, the Law Division judgment is reversed because of lack of jurisdiction.
GRUCCIO, J.A.D., dissenting.
My colleagues have come to a result with which I cannot concur. I find the tort action as one seeking recovery for a non-compensable injury thereby subjecting it to the jurisdiction of the Law Division. Therefore, I dissent.
Defendant contends that the Workmen's Compensation Act provides the exclusive remedy for work-related injuries, that remedy being a claim for compensation to the employer's insurance carrier and, if necessary, an action before the court of compensation. It also contends that an action at common law is not permitted and therefore, the Superior Court, Law Division does not have subject matter jurisdiction over such claims. Thus, defendant challenges the Law Division's acceptance of jurisdiction over this case.
Plaintiff contends that while the Workmen's Compensation Act provides for an exclusive remedy for work-related compensable injuries, his injuries were not compensable under the act because of defendant's negligent and intentional actions. As such, a suit at common law is permitted to compensate plaintiff for his injuries suffered and not recoverable under the Workmen's Compensation Act. He also contends that defendant's failure to raise and argue the exclusive remedy issue at trial acts as a waiver of that defense and, therefore, may not be argued here.
N.J.S.A. 34:15-8 provides, in pertinent part:
If any injury or death is compensable under this article, a person shall not be liable to anyone at common law or otherwise on account of such injury or death *528 for any act or omission occurring while such person was in the same employ as the person injured or killed, except for intentional wrong.
By its very words, the statute permits alternate remedies at common law when the alleged wrong was intentional. Such an intentional wrong has been interpreted as not being "equatable with `gross negligence,' or similar concepts of importing constructive intent," but rather "the Legislature intended the words `intentional wrong,' in this context, to have their commonly understood signification of deliberate intention." Bryan v. Jeffers, 103 N.J. Super. 522, 523-524 (App.Div. 1968).
A claimant removes his case from the court of compensation by pleading intentional wrongs for which he seeks damages at common law and are not compensable under workmen's compensation. See Rothfuss v. Baker's Mut. Insurance Co., 107 N.J. Super. 189, 193-195 (App.Div. 1969). A claimant is not precluded from seeking compensation under the act if they also seek damages under common law. See Millison v. E.I. du Pont de Nemours & Co., 101 N.J. 161, 184-188 (1985). If the claimant prevails in both courts, the compensation should be offset by the civil damage award. Id. at 187.
Basically, the question of which court is to hear the case is a question of subject matter jurisdiction. Generally, the defense of lack of subject matter jurisdiction is a non-waiveable defense. See Gilbert v. Gladden, 87 N.J. 275, 280-281 (1981). "Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the matter except as otherwise provided by R. 1:13-4 [Transfer of Actions]." R. 4:6-7.
However, the Appellate Division in Tremonte v. Jersey Plastic Molders, Inc., 190 N.J. Super. 597 (App.Div. 1983), held that the "right to have the common law action dismissed on ... [an exclusive remedy defense] ground is not one that cannot be waived." Id. 190 N.J. Super. at 600. In Tremonte, the plaintiff was injured on the sidewalk in front of the building where she worked. She filed both a compensation action and a common law negligence action after discovery revealed that the compensation *529 insurance company would not pay the case on a compensation basis. On the day of trial for the latter action, "the employer (or its liability insurance carrier) settled the common law suit by a voluntary payment." Id. The workmen's compensation claim was tried concluding in a judgment for plaintiff. The court held that the settlement did not bar plaintiff from seeking recovery under the act. However, the settlement did bar defendant from positing the exclusive remedy defense on appeal, a defense which it had a right to raise at the trial level.
The employer did not undertake to assert that right. Rather, it chose to buy its way out of that litigation and thereby waived its right to defend. In a word, it volunteered a payment which it did not need to make. "Waiver is a voluntary relinquishment of a known right evidenced by a clear, unequivocal and decisive act from which an intention to relinquish the right can be based." Mitchell v. Alfred Hoffman, Inc., 48 N.J. Super. 396, 405 (App.Div. 1985), certif. den. 26 N.J. 303 (1958). A clearer case of waiver would be hard to contrive. [Id. 190 N.J. Super. at 600-601, footnote omitted].
In the present case, plaintiff brought both a compensation action and a common law action claiming negligent and intentional conduct. Defendant asserted as an affirmative defense in its answer in the common law action the issue of exclusive remedy. The issue was again raised in the discussion as to the admissibility of exhibits but was only touched on briefly and was recognized as being meritless. Defendant never actively pursued the defense. It never sought summary judgment based on the exclusive remedy defense nor was it raised in the motion for new trial.
Essentially, defendant submitted itself to the Law Division to have the trier of fact consider the alleged negligent and intentional misconduct. By not raising the defense and exercising that right, defendant waived the right. Although factually the case is dissimilar from Tremonte, the underlying principles there are equally applicable here. Defendant chose not to exercise its right to rely on the exclusive remedy defense and, therefore, voluntarily relinquished a known right by a clear and unequivocal act.
*530 In spite of this waiver, the defense was not available to defendant to exercise. In considering the nature of the case before it, the trial court correctly noted that "the claim [is] to compensate Mr. Cortes for an exacerbation of an injury because Interboro did not timely authorize certain tests, and/or an operation, and the pain and suffering that Mr. Cortes has endured, and will endure as the result of that failure." Counsel for defendant agreed that was the basis of the claim. When instructing the jury, the trial judge indicated that plaintiff's contention was that defendant was "negligent because it failed to furnish ... [plaintiff] with the medical treatment he required." Therefore, the action was seeking damages for the conduct of defendant which caused exacerbation of injuries, the injuries being compensable under the act but the exacerbation not being compensable under the act. This was the breach of duty theory presented to the jury upon which it found liability.
The compensation action most likely seeks recovery for the injury which was work-related and compensable under N.J.S.A. 34:15-1. That injury was the harm done to plaintiff's back while working for his employer. The common law action seeks damages for defendant's actions which are not compensable under the act but may be, and were in the eyes of the jury, recoverable under a common law theory. The damages seek to compensate plaintiff for the permanency of the injury allegedly caused by defendant's negligent or intentional act of refusing to authorize certain treatments. Those treatments would supposedly have prevented that permanency. Therefore, it was defendant's conduct which created an injury over and above the work-related injury. Such an injury is non-compensable under the act and therefore plaintiff may seek recovery under a common-law theory.
The act is meant to provide recovery for a worker who suffers a compensable injury. The purpose of the act is not to protect or insulate the compensation insurance carrier from *531 common-law liability when its negligent or intentional actions create an exacerbation of that injury. Nor is the act meant to enhance or increase the risk of an employer by allowing the compensation carrier to negligently review a claim in their fiduciary capacity free from liability flowing from that negligence. The compensation carrier's liability insurance must shoulder that burden, not the compensation fund. Likewise, a worker's remedies should not be limited solely to workmen's compensation when the exacerbated injuries or additional injuries would not be adequately covered by that fund.
The majority's reliance upon Estelle v. Board of Education of Red Bank, 14 N.J. 256 (1954), is misplaced. The recovery sought against defendant is not compensable under the act. Therefore, the Law Division had jurisdiction in the first instance and defendant did not have the defense of exclusivity.
Many of the cases which hold that the court of compensation has exclusive jurisdiction deal with the initial underlying injury that created the situation and subsequent litigation. See i.e., Dunlevy v. Kemper Ins. Group, 220 N.J. Super. 464 (App.Div. 1987); Rothfuss, 107 N.J. Super. at 193. However, in Rothfuss, as in the present case, the actions of defendant insurance company which resulted in unnecessary suffering and prolonged pain and mental anguish were actionable at common law.
There was nothing wrong with plaintiff's procedure in prosecuting his case. Likewise, the court did not err or abuse any discretion in hearing the case and allowing the jury to decide its merits. And, defendant waived its exclusive remedy defense, a defense it really did not have, by going forward and defending the case on its merits and not asking the Law Division to properly consider and rule on the subject matter jurisdiction question. Therefore, the trial court's opinion should be affirmed in its entirety.
NOTES
[1] Cortes' compensation petition has been held in abeyance pending disposition of this action.
[2] Summary judgment was granted in favor of Drs. Flax and Siegel on plaintiffs' malpractice claim on the ground that there was no physician-patient relationship between Cortes and the defendant physicians.
[3] Defendant represented that it would consent to the reopening of the compensation claim.
[4] The foundation of our colleague's dissent is his view that exacerbation of Cortes' condition as the result of delayed treatment or diagnosis is not compensable. Obviously we disagree.
[5] But cf. Keller v. Pastuch, 94 N.J. Super. 499 (App.Div. 1967), certif. den. 49 N.J. 372 (1967) which held that defendant's motion, made after jury selection and after time for instituting compensation claim had expired, to amend answer to assert bar of the compensation act should not have been granted. Curiously, this opinion did not cite Estelle.