ERVIN, Judge,
concurring and dissenting.
I concur with all aspects of the majority’s opinion except that portion affirming the judge of compensation claims’ (JCC) order which, in calculating a reasonable attorney’s fee pursuant to the statutory fee formula, excluded attendant care benefits from the amount of benefits secured on behalf of the claimant. In entering his order awarding an attorney’s fee of $75,-000, the JCC took into consideration only $320,000 of benefits obtained by claimant’s attorney, excluding therefrom more than $3 million of the present and reasonably predictable future value of attendant care benefits. The JCC reasoned that exclusion of such benefits was justified on the separate grounds that attendant care benefits were not within the scope of the issues litigated, because they had not been claimed or litigated at the earlier claim proceeding, and the claimant had initially rejected workers’ compensation benefits which the carrier had voluntarily offered to her, notwithstanding that the offer was later withdrawn after the claim was filed.
Referring to the first reason advanced by the JCC, that attendant care benefits were not specifically requested, and hence were not within the scope of the issues litigated, I consider it important to note that the JCC’s ruling disregarded a number of cases from this court recognizing the self-executing nature of the Workers’ Compensation Law, requiring the employer/carrier (E/C) to monitor continuously the claimant’s progress, thereby imposing a continuing obligation on the E/C — once it has knowledge of the injury and knows, or reasonably should know from the facts investigated, that benefits are due — to place needed benefits in the hands of the worker. See, e.g., Sistrunk v. City of Dunedin, 513 So.2d 200 (Fla. 1st DCA 1987) (Section 440.-13, Florida Statutes, requires the E/C to provide attendant care benefits, even though not requested, if the nature of the injury requires the payment of same); Walt Disney World Co. v. Harrison, 443 So.2d 389 (Fla. 1st DCA 1983) (employer’s defense that it was not obligated to pay attendant care benefits to an injured employee before receipt of the treating physician’s letter formally requesting such benefits, was rejected on the ground that the employer knew or should have known that such benefits were due).
In the case at bar the E/C was on notice shortly following the January 20, 1983 catastrophic injury to claimant that she would no doubt require attendant care benefits for the remainder of her natural life.[1] The record specifically discloses that the carrier’s claim representative testified at the initial claim hearing in 1985 that the E/C was aware of the employee’s need for such care as of April 11, 1983, less than three months after her accident. Although it is true that when the employee first filed her claim for workers’ compensation benefits in 1985, she did not include a specific request for attendant care benefits, I cannot conceive that the absence of such a request in any way prejudiced the carrier in the defense of the claim, because its controversion was a simple denial of the compensa-bility of all benefits that flowed from the injury. We have previously recognized in cases involving a defense based upon a denial of compensability that all benefits which may result from an initial finding of compensability need not then be specifically requested. For example, in Polote Corp. v. Meredith, 482 So.2d 515 (Fla. 1st DCA 1986), we affirmed the JCC’s inclusion of all reasonably predictable benefits obtained by the attorney on behalf of his client, even though permanent total disability benefits had not been requested or litigated at an earlier proceeding where the injuries were determined compensable, on the ground “that claimant is entitled to recover a reasonable attorney’s fee from the employer/carrier for his attorney’s services in securing claimant’s reasonably predictable benefits flowing from the finding of compensability.” Polote Corp., 482 So.2d at 517 (emphasis added). In her concurring opinion, Judge Wentworth observed “that the award of fees for deter *468 mining compensability in this case properly includes services in proving permanent total disability because the latter services were necessary to prove the full value of both accrued and discounted future benefits achieved by services rendered in the compensability hearing.” Id. (emphasis added).
Thus, there is a major distinction between a case such as Samurai of the Falls, Inc. v. Sul, 509 So.2d 359 (Fla. 1st DCA), review denied, 518 So.2d 1274 (Fla.1987), relied upon by the JCC below, in which the E/C did not defend against a claim on the basis that it was noncompensable, and Polote Corp. and the instant case, in which the carriers denied compens-ability. In Samurai of the Falls, Inc., the JCC erroneously included wage-loss benefits that the E/C had voluntarily paid in the total value of benefits secured through the attorney’s efforts, overlooking the fact that the attorney’s efforts had been directed only to achieving temporary total disability benefits and a change in the compensation rate. Compare also the facts in Barr v. Pantry Pride, 518 So.2d 1309 (Fla. 1st DCA 1987), review denied, 525 So.2d 876 (Fla.1988), wherein this court affirmed that portion of the JCC’s order which had refused to permit the payment of an attorney’s fee relating to the reasonably predictable value of future permanent total disability benefits on the ground that the carrier had voluntarily paid such benefits. The important distinction, however, between the facts in Barr and those in the present- case is that in Barr the carrier never denied the claim’s compensability and had made regular payments of temporary total disability benefits to claimant up to the time that it accepted her as permanently, totally disabled.
In the case on review, because the only issue litigated before the JCC at the initial claim proceeding was the compensability of the claim, I consider that the E/C’s denial of the claim on such ground also had the effect of denying its responsibility for paying all of the benefits that were then owing or might later reasonably be sought. Therefore, in determining the value of the benefits secured, it is immaterial whether the carrier at a later date agreed to pay the benefits before that issue came on for hearing. A similar factual scenario was before this court in Groves v. Butler, 525 So.2d 1003 (Fla. 1st DCA 1988), in which we rejected the carrier’s argument that it should not be held responsible for paying a fee awarded on a percentage of benefits secured that included the value of permanent total disability benefits voluntarily paid after a finding of compensability had been entered. In approving the fee, we observed that “it is unlikely this voluntary acceptance would have occurred without the intervention of claimant’s attorney.” Id. at 1004. Applying the above reasoning to the case at bar, I consider it was necessary for the JCC to include all the past and reasonably predictable value of all future attendant care benefits within the amount of benefits secured to the claimant through her attorney’s efforts, because such benefits were the natural and probable consequence that flowed from the finding of compensability.
Alternatively, even if we were to accept the E/C’s apparent argument that it must be given specific written notice of the claim for attendant care benefits, despite substantial case law to the contrary, the record reflects that after remand of the case following this court’s mandate in Greene v. Maharaja of India, 485 So.2d 1329 (Fla. 1st DCA), review denied, 494 So.2d 1151 (Fla.1986) (Greene I), when claimant, on April 15, 1987, served notice on the carrier of the claim hearing, she specifically asserted in the notice that one of the issues to be decided was claimant’s entitlement to attendant care benefits.[2] Accordingly, although the claim itself was not amended to include a specific request for such benefits, the carrier was clearly on *469 written notice that this was one of the issues to be litigated at the subsequent hearing. Considering all of the information at the carrier’s disposal, I would reject as spurious the carrier’s argument that it was without notice of the claimant’s need for attendant care benefits.
As to the second reason advanced by the JCC for his refusal to include the value of attendant care benefits within those ob.tained by the efforts of claimant’s attorney, the JCC observed that claimant initially refused the benefits that the carrier had voluntarily offered to her, and therefore such benefits were not obtained for the claimant through the attorney’s efforts. In excluding those benefits, the JCC in my view fell into the same error as did the JCC whose earlier order we reversed in Greene I. There, in determining the claim to be noncompensable, the JCC had reasoned that the claimant, by initially refusing compensation benefits, was equitably estopped from later pursuing a claim for such benefits, because she had earlier taken a contrary position in her personal injury claim that she was not acting within the course and scope of her employment at the time of accident. Compare the following language from the JCC’s order now on review:
In order to be “reasonably predictable,” the benefits upon which a fee is sought must result “from the scope of the issues litigated.” The “scope of the issues litigated” in this instance beeome[s] particularly significant since all benefits were originally offered to the claimant but refused. The claimant could have accepted the benefits offered and still pursued her claim against the employer and others in a civil cause of action.
I thought this court in Greene I had finally laid to rest any lingering belief that the claimant was estopped from pursuing a claim for workers’ compensation if she had first brought a personal injury action against her employer for damages, rather than seeking workers’ compensation benefits. In Greene I, following the rule stated in Tremonte v. Jersey Plastic Molders, Inc., 190 N.J.Super. 597, 601-02, 464 A.2d 1193, 1195-96 (Super.Ct.App.Div.1983), we unequivocally held that such benefits cannot be waived by an injured employee’s acceptance of payment from her employer in satisfaction of a common law tort action for damages. Despite our holding in Greene I, the JCC’s order below and the majority’s opinion continue to iterate as a basis for excluding attendant care benefits the reason that all benefits were initially offered to the claimant but were refused. Neither the JCC nor the majority, however, mention the fact that the “voluntary” offer of the carrier was revoked after the worker pursued her personal injury action, and that the carrier thereafter steadfastly resisted paying any benefits until the Florida Supreme Court had denied review of our decision holding the claim compensable.
I do not wish to imply that the JCC does not have the discretion under Section 440.-34(1), Florida Statutes (1981), to adjust an attorney’s fee award. The exercise of this discretion, however, does not come into play until the JCC has properly determined the amount of benefits secured, because this amount is a necessary starting point and a significant factor in the analysis of an appropriate attorney’s fee award. See Mt. Sinai Medical Center v. Samuels, 453 So.2d 82 (Fla. 1st DCA 1984). Moreover, a departure from the statutory percentage formula should be made only in exceptional circumstances. See Fiesta Fashions, Inc. v. Capin, 450 So.2d 1128 (Fla. 1st DCA 1984). This is because the fee formula, as provided in section 440.34, “embodies a legislative intent to standardize the method for assessing fees absent special circumstances, and when a [JCC] departs from the statutory schedule, his order should reflect that he [has] considered all the relevant, prescribed factors to the extent that circumstances permit.” Fumigation Dep’t & Claims Center v. Pearson, 559 So.2d 587, 590 (Fla. 1st DCA 1989) (motion for rehearing pending).
I would therefore reverse the attorney’s fee awarded and remand the case to the JCC with directions that he include within the value of the benefits secured by claimant’s attorney the reasonably predictable value of all attendant care benefits that *470 flowed from the finding of compensability, and then enter a fee based upon the statutory percentage formula or, after considering all the necessary, relevant statutory criteria, adjust the fee accordingly.

. There was evidence at the hearing seeking attorney's fees that claimant, a quadriplegic then nearly 28 years of age, had a life expectancy of 68 years.

. The request for attendant care benefits did not proceed to hearing in that the request was eventually accepted by the carrier, and past due benefits in the amount of $213,370 were paid in one lump sum in July 1987, pursuant to the parties' stipulation, which agreed that claimant was entitled to $1,109 per week from the date of the accident through the week ending March 23, 1987, excluding periods of hospitalization, and $987 per week thereafter and continuing.